

_____  )
APRIL CHANDLER.                      )   Case No.3:24 CV-206
                                     )
                    Plaintiff        )
                                     )
         -against-                   )
                                     )   **AMENDED COMPLAINT**
                                     )
MARK SKIPPER AKA SKIP ARCHIMEDES,    )
MICHAEL MALOY, THOMAS HARRISION,     )
DAVID GUC ET AL.                     )
                                     )
                    Defendants       )
_____  )

1. In January 2023, Defendant Thomas Harrison on behalf of Vanguard talent agency based in Los Angeles owned by David Guc, approached Petitioner to represent her and manage her film and television career as a director, producer and writer individually, and her projects, including TV show concepts in the works, FreeKick Reality Show, Forgotten Documentary Series in principal photography, and Petitioner's post production projects already filmed, including Documentary Film, Fountain of Youth, which had already been cut and distribution offered to Petitioner with agreement signed in November 2018.

2. Petitioner wasn't happy with the cut and felt the film needed a stronger emotional connection for the audience and looked for another editor to bring Petitioner's vision to life. Unfortunately, the

fires in California followed by the onset of the pandemic delayed Petitioner's film Fountain of Youth from being released.

3. Defendant Michael Maloy owner of Empirical Media and Empirical Reality was introduced to the Petitioner and film project Fountain of Youth as a "work made for hire" editor in January 2023 by Defendant Thomas Harrison acting as Petitioner's Manager who along with David Guc represented Michael Maloy who was trying to rebrand himself as a script writer in Hollywood and not an editor or producer. The latest cut on Petitioner's Vimeo of 1 hour and 48 minutes was shared with Defendant Michael Maloy, along with multiple detailed conversations spanning weeks with hours of direction from Petitioner to Defendant on the phone and via text explaining her vision for the film and what Petitioner had attempted to achieve with her latest film cut in 2018 and her goals for the film for a Worldwide audience post pandemic.

4. There were a few delays with the drives being sent to Defendant Michael Maloy given Petitioner was cautious given his friendship with Greg Ellis aka Jonathan Rees and something didn't feel right to Petitioner, however, with reassurances from Defendant Thomas Harrison who reiterated time and time again that Defendant Michael Maloy was a professional, decent, honest man, Petitioner eventually sent the 4 drives to Defendant Michael Maloy in August 2023 with all raw A and B footage for film project FOUNTAIN OF YOUTH sent to his address: 440 N VENICE BLVD, VENICE, LOS ANGELES 90291-4531 with tracking and signed for via USPS.

5. During the period from February 2023 until filing Federal Court Petition in February 2024, Defendants were aware of abuse and violence Petitioner had been subjected to by their friend and work colleague Greg Ellis aka Jonathan Rees who from November 2022 ongoing has been abusive, violent, fraudulent and causing harm to Petitioner who consequently had no choice but to walk away from his documentary series The Respondent as the Director, Writer and

Producer due to his bad behavior towards Petitioner, and him receiving another Domestic Violence Restraining Order against him for sending out Revenge Porn and extorting his ex-girlfriend, and when Greg Ellis aka Jonathan Rees sent derogatory messages to all Defendants about Petitioner, Defendants told Petitioner they were not concerned nor did they believe him and they continued to work on her film project Fountain of Youth with Petitioner.

6. After the Petitioner completed the film Narration and produced and directed the project to fruition with first cut completed ready to go to sales agent who Petitioner found through her own connections, and negotiated a deal herself directly with Sales Agent, Big Media fully executed in the best interests of Petitioner's film with high interest by them for Worldwide distribution, especially from Italy, Spain, UK, India, South America, Poland and France, Defendant Michael Maloy ghosted Petitioner.

7. Defendant Thomas Harrison informed Petitioner multiple times over weeks that the issue with Defendant Michael Maloy was to do with derogatory information that he had received from their friend Greg Ellis aka Jonathan Rees about Petitioner, and Defendant Thomas Harrison told Petitioner he knew it wasn't true and would resolve, and for her not to take any legal action or contact Defendant Michael Maloy directly, instead to sit tight and be patient, it will be fine, he will resolve.

8. Defendant Thomas Harrison requested Petitioner send him the video releases from Cast and Experts who Petitioner and crew interviewed for the film spanning years, and all contracts which form the chain of title. Petitioner expressed her concern to Defendant Thomas Harrison that this situation didn't feel right and didn't want Defendant Michael Maloy to receive the releases or contracts, or for him to be told the name of the Sales Agent or Distributor to prevent further complications that Petitioner now felt existed, which Defendant Thomas Harrison agreed to keep private until this matter

was resolved and reassured Petitioner that if she sent Defendant Thomas Harrison the original video releases, updated video releases, and contracts as part of the Chain of Title along with the signed distribution agreement between Petitioner and Sales Agent, Defendant Michael Maloy would edit Petitioners notes from First Cut as the Director in order to send Final Cut to Sales Agent given they were ready for Worldwide Distribution.

9. Defendant Thomas Harrison lied to Petitioner and told Defendant Michael Maloy the name of Sales Agent and Distributor.

10. After all Chain of Title documents were received by Defendant Thomas Harrison sent to him by the Petitioner, Defendant Michael Maloy contacted the Sales Agent Big Media via their contact form on their website given he didn't have a direct relationship with them, stating to them in writing that the film Quest For Youth was owned by him and Petitioner didn't have the authority to sign an agreement with them.

11. Defendant's friend Greg Ellis aka Jonathan Rees persevered for months to discredit Petitioner by any means necessary for what he believes is a betrayal due to Petitioner reporting him for abuse, violence, fraud, theft and gun crimes, and walking away from him and his project, on a rampage to contact as many of Petitioners business associates and contacts as possible, including finding Defendant Mark Skipper aka Skip Archimedes who was not in the Entertainment Industry, not known by the other Defendants living thousands of miles away in the Countryside of Norfolk, in the United Kingdom working as a Yoga Teacher and Life Coach. Defendant Mark Skipper aka Skip Archimedes for as long as Petitioner has known him has been desperate to connect with celebrities and make a name for himself in Hollywood, and no doubt why he was happy to align with his new friend Greg Ellis aka Jonathan Rees and act as an enabler given he was disgruntled after

Petitioner walked away from his project due to his story not being authentic.

12. Defendant Mark Skipper aka Skip Archimedes sent a follow up email to Sales Agent Big Media after he was connected directly with Defendant Michael Maloy via their new mutual friend, which was also sent via Sales Agent website contact form stating he along with Defendants Thomas Harrison and Michael Maloy would make an even better version of the film without Petitioner, asking Big Media to contact him to discuss future distribution without Petitioner involved, along with Defendant Mark Skipper aka Skip Archimedes sharing derogatory false information about Petitioner and websites that were set up to hurt Petitioners reputation and ruin her relationship with the Sales Agent and get Petitioner's film pulled, which happened with the agent contacting Petitioner in January 2023 to inform her they have to put a hold on distribution and pulled Petitioners film from their catalogue and website not only ruining Petitioners reputation, but also disrupting Petitioners financial stability.

13. History on Defendant Mark Skipper aka Skip Archimedes: Petitioner has known him for more than 15 years in professional speaking circles and social settings. He was desperate to work in the Entertainment Industry and would vocalize that he was the next Tony Robbins and given his physique at the time and his flexibility, he was filmed for the B roll footage in the Fountain of Youth as a non-speaking actor.

14. A couple of years after he was filmed for Fountain of Youth B Roll, Defendant Mark Skipper aka Skip Archimedes approached Petitioner to make a documentary film about his life, who for years had spoken on stage about his story, even interviewed by British and Australian tabloids and other media about his story with him sharing that he was a British Gymnastics Champion, broke his back, unable to walk again, told he'd be in a wheelchair for life, only to heal

himself using his own methods and 12 months later went on to win another Gold medal as British Gymnastics Champion for the second time. Unfortunately, during prep of this real story project, Petitioner and crew uncovered Defendant Mark Skipper aka Skip Archimedes story was fake, with Petitioner contacting British Gymnastics for confirmation, then hired an attorney in the United Kingdom who uncovered a great deal about the Defendant Mark Skipper aka Skip Archimedes using a broken cat spine x-ray in a lecture at a school in Oxford he was hired to speak at, as evidence for his own injury given he didn't have any x-rays or evidence that his broken back story was true.

15. Petitioner spent substantial money and time on Defendant Mark Skipper aka Skip Archimedes real story project only to walk away with him refusing to back down from his fraudulent story and instead tried to extort Petitioner with threats of court action for breach of contract trying to force Petitioner to continue on the project as Director and Producer even though his story wasn't true or else Petitioner would be hurt. Petitioner ignored Defendant Mark Skipper aka Skip Archimedes and eventually the threats stopped and Petitioner heard nothing more about this for 4 years until Defendant Mark Skipper aka Skip Archimedes was contacted by Greg Ellis aka Jonathan Rees who connected Defendant Mark Skipper aka Skip Archimedes to Defendants Thomas Harrison and Michael Maloy providing him with their private cell phone numbers to sabotage Petitioners relationships and film projects.

16. Given Petitioner uncovered Defendant Mark Skipper aka Skip Archimedes story was fake, Petitioner didn't want to include him in her film Fountain of Youth, not even as a non-speaking actor for B Roll footage and told Defendant Michael Maloy not to use this footage shot in Mexico, and instead Petitioner would shoot other footage and suggested some stock footage to fill gaps to keep the flow of the film in the meantime. Defendant Michael Maloy

accommodated Petitioner's wishes given she is the Director, Producer and owner of the Film and raw footage.

17. Originally the film was tentatively called Eternal Youth, which Petitioner changed to Fountain of Youth in 2016. As the first cut was close to completion, Petitioner felt the name Fountain of Youth still wasn't right for the film given it was more a Quest to uncover the knowledge of the Fountain of Youth, how to live longer in our lifetime, reduce stress, control emotions, eat and drink better, move, meditate and breathe more efficiently, and why Petitioner changed the name to Quest For Youth and sent new film name to Defendants via text, which was received and well liked by Defendants.

18. When Petitioner was ghosted after film was narrated and cut, followed by Defendants contacting Petitioner's Sales Agent, Petitioner became extremely concerned and contacted the Copyright Office to file to protect her work [1-13494149971] only to find Defendant Michael Maloy had already filed a Copyright application for her film Quest For Youth, fraudulently failing to disclose to the Copyright office that he was "work made for hire" on his application, which he filed during the period of time Defendant Thomas Harrison told Petitioner to be patient and not take any action, that he would resolve and insisted Petitioner send over video releases and chain of title for the project, which Petitioner did believing Defendants were working towards a resolution getting all paperwork in order ready for film to be released.

19. During this period between November 2023 and February 2024 when Petitioner was told by Defendant Thomas Harrison not to take any action and to patiently wait for him to resolve this situation, Defendant Michael Maloy also reached out to film producer Frazer Bailey of Play TV in Australia and asked him if he had any rights to the film Quest For Youth given he has been involved working with Petitioner on this project from the beginning. Frazer Bailey explained to Petitioner that he responded to an email by Defendant

Michael Maloy that the Petitioner solely owned the footage and Chain of Title as he had signed over his rights to Petitioner ready for distribution with him set up to receive his agreed backend producer fee of 15% when Petitioner receives payment from distribution.

20. Frazer Bailey explained to Petitioner that he believed at the time that this reach out by Defendant Michael Maloy wasn't nefarious, simply an editor doing his due diligence prior to film distribution, which wasn't unusual and why he was happy to share information freely with Defendant Michael Maloy believing he was still working for Petitioner and in the best interest of her project, not realizing after these emails back and forth that Defendant Michael Maloy had ulterior motives for contacting him and in fact registered Quest For Youth with the Copyright Office attempting to take ownership of the project immediately after correspondence with Frazer Bailey confirming Petitioner owned the sole rights.

21. On request by Defendant Michael Maloy, Frazer Bailey also provided information in writing about Defendant Mark Skipper aka Skip Archimedes stating he was a conman, which he shared in confidence only for Defendant Mark Skipper aka Skip Archimedes to contact Frazer Bailey a few days later stating Frazer Bailey was in danger from Petitioner and it was essential they speak immediately. Frazer Bailey contacted the Petitioner upset that Defendant Michael Maloy had betrayed his trust sharing information about Defendant Mark Skipper aka Skip Archimedes and didn't understand why Petitioner's Editor would act in this way.

22. In January 2024, Petitioner explained to Frazer Bailey that the Editor Defendant Michael Maloy was not who she thought he was and Petitioner was considering working with another Editor to finish the film ready for Worldwide distribution.

23. In February 2024, Petitioner sent notice to Defendant Michael Maloy and cc'd Defendant Thomas Harrison with 3 options on how

Petitioner and Defendant Michael Maloy could conclude their relationship, which was consequently ignored by Defendant Michael Maloy.

24. In February 2024, Petitioner sent notice via email to Vanguard Talent Agency, David, Guc and Thomas Harrison that they were fired from representing Petitioner and her projects.

25. In February 2024, Petitioner sent a Cease and Detest notice via email to Defendants Mark Skipper aka Skip Archimedes, Michael Maloy, Thomas Harrison, David Guc for all Defendants to stop using Petitioners raw footage and Copyright and asked for all drives to be returned to Petitioner, ignored by Defendants.

26. Petitioner believes Defendants concocted their plan with a clear intention to harm Petitioner with a conspiracy to steal Petitioner's film and raw footage, abusing Petitioner, creating unnecessary emotional, physical and financial distress, disrupting Petitioner's business, damaging her reputation, creating financial instability for Petitioner and her family, and to fraudulently receive payments for Petitioner's creativity, originality and fixation — a substantial sum which could return USD$2.5m - USD$5m to Petitioner paid over 3 years for global distribution.


Plaintiff respectfully requests the Court enter judgment in Plaintiffs favor and against Defendants and grant Plaintiffs the following relief:


I. Awarding Plaintiff damages;
II. Compensatory damages, including past and future economic damages and non-economic damages;
III. Punitive damages, as allowed by law;
IV. Attorneys' fees, as allowed by law;

V. All costs associated with this action, including, but not limited to, expert fees, deposition expenses, travel expenses, filing fees, and trial presentation expenses on all claims allowed by law;

VI. Pre-filing, pre-judgment, and post-judgement interest at the highest lawful rate; and

VII. Appropriate injunctive relief against Defendant, including a permanent injunction ordering Defendants to cease using Plaintiffs copyright and footage of Plaintiffs in Defendants possession.

VIII. Any other appropriate relief at law and equity that this Court deems just and proper.

Signed: _____

Plaintiff/Petitioner

Date: 03/10/2024