UNITED STATES DISTRICT COURT

Northern District of New York

6th Judicial Division

U.S. DISTRICT COURT – N.D. OF N.Y.

FILED

**Apr 04 - 2024**

John M. Domurad, Clerk

_____  )
                                          )
APRIL CHANDLER.                           )      Case No.3:24 CV-206
                                          )
              Plaintiff                   )
                                          )
       -against-                          )
                                          )      **MOTION FOR LEAVE**
                                          )      To Combine Answers To Motions
                                          )      In One Document In Response To
                                          )      Motion To Dismiss and Supplemental
                                          )
                                          )
MARK SKIPPER AKA SKIP ARCHIMEDES,         )
MICHAEL MALOY, THOMAS HARRISION,          )
DAVID GUC ET AL.                          )
                                          )
              Defendants                  )
_____  )

Plaintiff respectfully submits a Motion For Leave and requests permission to combine

appropriate revisions, responses to motions and errors found by Plaintiff in her complaint in one

document to be named "Revised Complaint" to help make the complaint clearer for Defendants,

especially Defendant Michael Maloy given the multiple motions and supplementals he has

submitted to the court, which has become extremely confusing. As Pro Se, Plaintiff

acknowledges errors were made in her original filings, however, Plaintiff has addressed these

errors in her responses to Defendant's motions and in the name of Justice, Plaintiff asks the court

to approve her request to combine answers within a document named revised complaint.

Plaintiff has responded to Defendant Michael Maloy's motions to dismiss, but the same motions were filed again by him not taking into account or addressing Plaintiff's responses to motions already submitted to the Court by Plaintiff, with further supplementals that seem to be addressing the same issues over again that Plaintiff has already addressed in multiple responses with uncertainty to which docket Defendant is responding to, or if his further supplemental submissions allows a further response from Plaintiff and why the Plaintiff respectfully requests in the name of Justice and for ease for the Court, that Plaintiff is allowed to combine all responses to motions to date in one document as a revised complaint to avoid further duplication of information and multiple documents for the court to review and allow Defendant time to review the Revised Complaint and respond accordingly if his concerns have not been addressed by Plaintiff.

Defendants are not prejudiced given they are not due to file a response to Plaintiff until the 19th and 22nd April, and 18th June 2024 respectively, with Plaintiff still attempting to serve three of the Defendants as of date of filing this response and motion.

Signed: _____

Plaintiff

Date: 04/04/2024

**REVISED COMPLAINT**

Plaintiff, April Chandler pro se, as and for their Complaint hereby alleges, upon information and belief, as follows:

**PRELIMINARY STATEMENT**

1.    Defendants contacted Plaintiff's sales agent "Big Media" with malicious falsehoods and exclusive websites set up about Plaintiff to destroy her reputation, credibility and livelihood, with evidence showing Defendants concocted their plan with a clear intention to harm Plaintiff with a conspiracy to steal Plaintiff's film and raw footage, abusing Plaintiff, creating unnecessary emotional, physical and financial distress, disrupting Plaintiff's business, damaging her reputation, creating financial instability for Plaintiff and her family, and to fraudulently receive payments for Plaintiff's copyright, creativity, originality and fixation.

2.    Plaintiff believes Defendants acted in this way due to her Gender and doesn't believe they would have committed the same unlawful criminal acts towards a male Filmmaker, therefore, discriminating against Plaintiff based on her gender.

3.    Defendant's stalking, harassment, and abuse of Plaintiff constitutes a NY State crime, however, at this time due to citizenship diversity, Federal court is Plaintiff's only recourse for Justice and to protect her copyright and content for future opportunities.

4.    Plaintiff attempted to resolve these matters and emailed Defendant Michael Maloy and cc'd Defendant Thomas Harrison on January 9th, 2024 at 17:28 with viable options in order to resolve issues amicably.  Defendant Michael Maloy ignored communication from Plaintiff and has never responded to Plaintiff's email as of today's date, instead three days later on January 12th, 2024 Defendant Michael Maloy deceitfully filed Plaintiff's creativity, originality and fixation with the Copyright Office knowing his behavior was fraudulent, unprofessional and unethical, as a "Work Made For Hire" on Plaintiff's Film Quest For

Youth in return for monetary gain as shown in Exhibit 3 in Plaintiff's "Answer to Court & Exhibits", not in exchange for ownership of Plaintiff's creativity, originality and fixation, which includes, but not limited to, completed Film and Plaintiff's Raw Footage filmed by Plaintiff and/or Producer Frazer Bailey spanning years with cast interviewed for Film with each expert signing video releases willingly agreeing to their footage belonging to Plaintiff: "I understand that all such recordings, in whatever medium, shall remain the property of April Chandler & the Production Company. I have read and fully understand the terms of this release."

5.  Plaintiff was completely ghosted "cut off" by Defendants after film was narrated by Plaintiff and she had directed the film to first cut with her raw footage and interviews, and an agreement was signed by Plaintiff with Big Media ready for Worldwide distribution.

6.  Defendants contacted Plaintiff's Sales Agent that Plaintiff didn't have authorization to sign the distribution agreement and stated they can make a better version without Plaintiff asking them to reach out to them cutting me out of the loop hoping to sign a new agreement with Big Media without my involvement.

7.  Defendants also contacted Big Media and her business associates with exclusive websites with derogatory false information and distorted facts, and direct falsehoods that Plaintiff is a "blackmailer", a "con", a "thief", falsehoods, which are slanderous and libel statements resulting in Big Media pulling Plaintiff's film from their catalogue.

8.  Defendant Thomas Harrison emailed Plaintiff instructing her not to contact Defendant Michael Maloy that both himself and Defendant David Guc would resolve this 'misunderstanding' with Defendant Michael Maloy, who they represented along with Plaintiff at Vanguard Talent Management stating to Plaintiff, he [Defendant Michael Maloy] was completely taken in by Skip [Defendant Mark Skipper aka Skip Archimedes] and believed Skip's story and Greg Ellis.

9.  When Plaintiff informed Defendants Thomas Harrison and David Guc that Defendant
    Michael Maloy and Defendant Mark Skipper aka Skip Archimedes had contacted her Sales
    Agents and they had pulled her film, they initially acted shocked, stating they would
    resolve, then instead they acted cowardly, not managing the situation, went radio silent with
    their inaction and inability to manage their client giving Defendant Michael Maloy
    confidence to continue with his illegal actions and consequently submitted a fraudulent
    claim to Copyright Office for Plaintiff's film project.

10. Defendant's claiming Plaintiff's film for themselves would result in significant sums,
    hundreds of thousands more than the 10% fee Defendant's Vanguard, Thomas Harrison and
    David Guc would have received from Plaintiff leading to Plaintiff firing Defendants
    Vanguard, David Guc and Thomas Harrison.

11. Plaintiff contacted the Copyright Office to file to protect her work [1-13494149971] only to
    find Defendant Michael Maloy had already filed a Copyright application for her film Quest
    For Youth, fraudulently failing to disclose to the Copyright office that he was "work made
    for hire" on his application, which he filed during the period of time Defendant Thomas
    Harrison told Plaintiff to be patient and not take any action, that he would resolve and
    insisted Plaintiff send over video releases and chain of title for the project, which Plaintiff
    did believing Defendants were working towards a resolution getting all paperwork in order
    ready for film to be released.

12. During the period between November 2023 and February 2024 when Plaintiff was told by
    Defendant Thomas Harrison not to take any action and to patiently wait for him to resolve
    this situation, Defendant Michael Maloy also reached out to film producer Frazer Bailey of
    Play TV in Australia and asked him if he had any rights to the film Quest For Youth given
    he has been involved working with Plaintiff on this project from the beginning. Frazer
    Bailey explained to Plaintiff that he responded to an email by Defendant Michael Maloy

that the Plaintiff solely owned the footage and Chain of Title as he had signed over his rights to Plaintiff ready for distribution with him set up to receive his agreed backend producer fee of 15% when Plaintiff receives payment from distribution.

13. Defendants left Plaintiff with no choice, but to file legal action in Federal Court against Defendants.

14. Accordingly, Plaintiff brings this action seeking injunctive, declaratory, and monetary relief against Defendants for intentional infliction of emotional distress, intentional interference with prospective economic advantage, copyright infringement and tortious interference with contract/prospective economic advantage.

## THE PARTIES

15. Plaintiff resides in Broome County, New York. Mailing Address: 200 Washington Avenue, 7181, Endicott, NY 13760.

16. Plaintiff is ex-Navy and a self made 23 year independent film veteran working in the Entertainment Industry as a Director, Writer and Producer, relying heavily on her reputation to earn a living to provide for her three minor children as their sole financial provider.

17. Defendant Mark Skipper resides in Norfolk, United Kingdom. 47 Archdale Close, Kings Lynn, Norfolk, PE330QG United Kingdom.

18. Defendant Mark Skipper is a Yoga Teacher, Life Coach and self proclaimed Motivational Speaker.

19. Defendant Michael Maloy resides in Los Angeles County, California. 440 N Venice Blvd, Venice, Los Angeles, CA 90291.

20.     Defendant Michael Maloy is a multi Emmy Winning Film Veteran with decades experience as a Consulting Executive Producer and Editor with a successful production company working with big networks, including, ABC in the Entertainment Industry.

21.     Defendant Thomas Harrison resides in Los Angeles County, California. 12115 San Vicente Blvd, Unit 111, Los Angeles, CA, 90049.

22.     Defendant Thomas Harrison is a successful Talent Agent and Manager. "Tom joined Vanguard Management Group on November 2014, as Vice President of Talent. Bringing 25 years as an Industry Veteran. Tom Previously was a Partner at Harrison Stokes, as well as a Vice President of Diverse Talent Group, and a Senior agent at The Kohner Agency for multiple years representing such talent as Chris Evans, Ryan Reynolds, Sofia Vergara and Josh Holloway just to mention a few, Tom also shepherded multiple films into productions as well as representing a multiple academy award winning special effects and production studio along with a select group of writers and directors."

23.     Defendant David Guc resides in Los Angeles County, California. 8060, Melrose Avenue – Suite 400, Los Angeles, CA 90046.

24.     Defendant David Guc is a successful Talent Agent and Manager. "Founder and President of Vanguard Management since 2000, and the Gersh Agency NY before that since 1985; Mr. Guç was responsible for having developed the Theatrical departments of Innovative Artists NY (1996), Don Buchwald and Associates, Susan Smith and Associates and J. Michael Bloom, Ltd. He personally represented the following from the onset of their careers: John Goodman, Kathleen Turner, John Turturro, Annette Bening, Ellen Barkin, Peter Gallagher, Wesley Snipes, Ken Olin, Cherry Jones, Peter Krause, Enrico Colantoni, amongst a host of other "actor's actors". Guç shepherded film projects for Eric Mendelsohn, Richard Wesley, Tom Noonan, Dennis Dugan, Eric Byler, Michael Lessac and Oz Scott. John Turturro's MAC and ILLUMINATA, Kathleen Turner's HOUSE of

CARDS, V.I WARSHOWSKY at Disney and her three picture deal at Columbia with Victor Kaufman which included development of TABLE MONEY by Jimmy Breslin, FINAL PAYMENTS by Mary Gordon and A FLAG for SUNRISE by Robert Stone."

25.     Defendant Vanguard Management Team, Inc. owned by David Guc is registered in California. 8060, Melrose Avenue – Suite 400, Los Angeles, CA 90046.

26.     Defendant Empirical Media, LLC owned by Michael Maloy is registered in California. 440 N Venice Blvd, Venice, Los Angeles, 90291.

27.     Defendant Empirical Reality, LLC owned by Michael Maloy is registered in California. 440 N Venice Blvd, Venice, Los Angeles, CA 90291.

28.     Defendant Harrison Thomas Group, LLC owned by Thomas Harrison and partnered with Vanguard since 2014 is registered in California. 8060, Melrose Avenue – Suite 400, Los Angeles, CA   90046.

## JURISDICTION AND VENUE

29.     This action is brought pursuant to 28 U.S.C § 1332(a)(1) based upon Diversity of Citizenship because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and it is between a citizen of New York and a citizen or subject of a different state.

30.     Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.

31.     This action is also brought pursuant to 28 U.S.C. § 1391, federal question and pursuant to 18 U.S.C. § 2261A and the U.S. Copyright Act, (codified at 17 U.S.C. §§ 101 - 810), is federal legislation which protects the writings of authors, which includes motion pictures.

32.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Northern District of New York is the Judicial District in which a substantial part of the events forming the basis of the Complaint occurred, where a substantial part of the evidence

involved in the subject action is situated, and where the majority of the witnesses to the events forming the basis of the Complaint reside. Furthermore, Defendants meets the requisite minimum contacts for jurisdiction in this District.

33.   In cases based on diversity of citizenship the lawsuit may be filed in the jurisdiction where the Plaintiff or the Defendant resides. 28 U.S.C. § 1332

34.   Not all Defendants reside in California, with Mark Skipper aka Skip Archimedes residing in Norfolk, United Kingdom.

35.   Given the diversity of Defendants and the Plaintiff domiciled in the Northern District of New York State, this Court and Judicial officers have proper jurisdiction and the right to act over Plaintiff's case against Defendant's.

## FACTUAL ALLEGATIONS

36.   In January 2023, Defendant Thomas Harrison on behalf of Vanguard talent agency based in Los Angeles owned by David Guc, approached Plaintiff to represent her and manage her film and television career as a director, producer and writer individually, and her projects, including TV show concepts in the works, FreeKick Reality Show, Forgotten Documentary Series in principal photography, and Plaintiff's post production projects already filmed, including Documentary Film, Fountain of Youth, which had already been cut and distribution offered to Plaintiff with agreement signed in November 2018.

37.   Defendant Michael Maloy owner of Empirical Media and Empirical Reality was introduced to the Plaintiff and her film project Fountain of Youth as a "work made for hire" editor in January 2023 by Defendant Thomas Harrison acting as Petitioner's Manager who along with David Guc represented Michael Maloy who was trying to rebrand himself as a script writer in Hollywood and not an editor or producer.

38.     Plaintiff shared the latest cut of Fountain of Youth from her Vimeo account of 1 hour and
        48 minutes with Defendants, along with multiple detailed conversations spanning weeks
        with hours of direction from Plaintiff to Defendant Michael Maloy on the phone and via
        text explaining her vision for the film and what Plaintiff had attempted to achieve with
        her latest film cut in 2018 and her goals for the film for a Worldwide audience post
        pandemic.

39.     Plaintiff wasn't happy with the cut and felt the film needed a stronger emotional
        connection for the audience and looked for another editor to bring Plaintiff's vision to
        life. Unfortunately, the fires in California followed by the onset of the pandemic delayed
        Plaintiff's film Fountain of Youth from being released. Defendant Michael Maloy
        convinced Plaintiff he was the right editor for this project.

40.     There were a few delays with the drives being sent to Defendant Michael Maloy given
        Plaintiff was cautious given his friendship with Greg Ellis aka Jonathan Rees and
        something didn't feel right to Plaintiff, however, with reassurances from Defendant
        Thomas Harrison who reiterated time and time again that Defendant Michael Maloy was
        a professional, decent, honest man, Plaintiff eventually sent the 4 drives to Defendant
        Michael Maloy in August 2023 with all raw A and B footage for film project FOUNTAIN
        OF YOUTH sent to his address: 440 N VENICE BLVD, VENICE, LOS ANGELES
        90291-4531 with tracking and signed for via USPS.

41.     During the period from February 2023 until filing Federal Court Petition in February
        2024, Defendants were aware of abuse and violence Plaintiff had been subjected to by
        their friend and work colleague Greg Ellis aka Jonathan Rees who from November 2022
        ongoing has been abusive, violent, fraudulent and causing harm to Plaintiff who
        consequently had no choice but to walk away from his documentary series The
        Respondent as the Director, Writer and Producer due to his bad behavior towards

10

Plaintiff, and him receiving another Domestic Violence Restraining Order against him for sending out Revenge Porn and extorting his ex-girlfriend, and when Greg Ellis aka Jonathan Rees sent derogatory messages to all Defendants about Plaintiff, Defendants told Plaintiff they were not concerned nor did they believe him and they continued to work on her film project Fountain of Youth with Plaintiff.

42.    After the Plaintiff completed the film Narration and produced and directed the project to fruition with first cut completed ready to go to sales agent who Plaintiff found through her own connections, and negotiated a deal herself directly with Sales Agent, Big Media fully executed in the best interests of Plaintiff's film with high interest by them for Worldwide distribution, especially from Italy, Spain, UK, India, South America, Poland and France, Defendant Michael Maloy ghosted "cut off" Plaintiff.

43.    Defendant Thomas Harrison informed Plaintiff multiple times over weeks that the issue with Defendant Michael Maloy was to do with derogatory information that he had received from their friend Greg Ellis aka Jonathan Rees about Plaintiff, and Defendant Thomas Harrison told Plaintiff he knew it wasn't true and would resolve, and for her not to take any legal action or contact Defendant Michael Maloy directly, instead to sit tight and be patient, it will be fine, he will resolve.

44.    Defendant Thomas Harrison requested Plaintiff send him the video releases from Cast and Experts who Plaintiff and crew interviewed for the film spanning years, and all contracts which form the chain of title. Plaintiff expressed her concern to Defendant Thomas Harrison that this situation didn't feel right and didn't want Defendant Michael Maloy to receive the releases or contracts, or for him to be told the name of the Sales Agent or Distributor to prevent further complications that Plaintiff now felt existed, which Defendant Thomas Harrison agreed to keep private until this matter was resolved and reassured Plaintiff that if she sent Defendant Thomas Harrison the original video

releases, updated video releases, and contracts as part of the Chain of Title along with the signed distribution agreement between Plaintiff and Sales Agent, Defendant Michael Maloy would edit Plaintiff's Director film notes from the First Cut in order to send Final Cut to Sales Agent given they were ready for Worldwide Distribution.

45.    Defendant Thomas Harrison lied to Plaintiff and told Defendant Michael Maloy the name of Sales Agent and Distributor.

46.    After all Chain of Title documents were received by Defendant Thomas Harrison sent to him by the Plaintiff, Defendant Michael Maloy contacted the Sales Agent Big Media via their contact form on their website given he didn't have a direct relationship with them, stating to them in writing that the film Quest For Youth was owned by him and Plaintiff didn't have the authority to sign an agreement with them.

47.    Defendant's friend Greg Ellis aka Jonathan Rees persevered for months to discredit Plaintiff by any means necessary for what he believes is a betrayal due to Plaintiff reporting him for abuse, violence, fraud, theft and gun crimes, and walking away from him and his project, on a rampage to contact as many of Plaintiff's business associates and contacts as possible, including finding Defendant Mark Skipper aka Skip Archimedes who was not in the Entertainment Industry, not known by the other Defendants living thousands of miles away in the Countryside of Norfolk, in the United Kingdom working as a Yoga Teacher, Life Coach and Motivational Speaker. Defendant Mark Skipper aka Skip Archimedes for as long as Plaintiff has known him has been desperate to connect with celebrities and make a name for himself in Hollywood, and no doubt why he was happy to align with his new friend Greg Ellis aka Jonathan Rees and act as an enabler given he was disgruntled after Plaintiff also walked away from his project 6 years ago due to his story not being authentic.

48.  Defendant Mark Skipper aka Skip Archimedes sent a follow up email to Sales Agent Big Media after he was connected directly with Defendant Michael Maloy via their new mutual friend, which was also sent via Sales Agent website contact form stating he along with Defendants Thomas Harrison and Michael Maloy would make an even better version of the film without Plaintiff, asking Big Media to contact him to discuss future distribution without Plaintiff involved, along with Defendant Mark Skipper aka Skip Archimedes sharing derogatory false information about Plaintiff and websites that were set up to hurt Plaintiff's reputation and ruin her relationship with the Sales Agent and get Plaintiff's film pulled, which happened with the agent contacting Plaintiff in or around January 2023 to inform her they have to put a hold on distribution and pulled Plaintiff's film from their catalogue and website not only ruining Plaintiff's reputation, but also disrupting Plaintiff's financial stability.

49.  History on Defendant Mark Skipper aka Skip Archimedes: Plaintiff has known him for more than 15 years in professional speaking circles and social settings. He was desperate to work in the Entertainment Industry and would vocalize that he was the next Tony Robbins and given his physique at the time and his flexibility, he was filmed for the B roll footage in the Fountain of Youth as a non-speaking actor.

50.  A couple of years after he was filmed for Fountain of Youth B Roll, Defendant Mark Skipper aka Skip Archimedes approached Plaintiff to make a documentary film about his life, who for years had spoken on stage about his story, even interviewed by British and Australian tabloids and other media about his story with him sharing that he was a British Gymnastics Champion, broke his back, unable to walk again, told he'd be in a wheelchair for life, only to heal himself using his own methods and 12 months later went on to win another Gold medal and become British Gymnastics Champion for the second time. Unfortunately, during prep of this real story documentary project, Petitioner and crew

13

uncovered Defendant Mark Skipper aka Skip Archimedes story was fake, with Plaintiff contacting British Gymnastics for confirmation, then hired an attorney in the United Kingdom who uncovered a great deal about the Defendant Mark Skipper aka Skip Archimedes using a broken cat spine x-ray in a lecture at a school in Oxford he was hired to speak at, as evidence for his own injury given he didn't have any x-rays or evidence that his broken back story was true.

51.     Plaintiff spent substantial money and time on Defendant Mark Skipper aka Skip Archimedes real story documentary project only to walk away with him refusing to back down from his fraudulent story and instead tried to extort Plaintiff with threats of court action for breach of contract trying to force Plaintiff to continue on the project as Director and Producer even though his story wasn't true or else Plaintiff would be hurt. Plaintiff ignored Defendant Mark Skipper aka Skip Archimedes and eventually the threats stopped and Plaintiff heard nothing more about this for 4 years until Defendant Mark Skipper aka Skip Archimedes was contacted by Greg Ellis aka Jonathan Rees who connected Defendant Mark Skipper aka Skip Archimedes to Defendants Thomas Harrison and Michael Maloy providing him with their private cell phone numbers to sabotage Plaintiff's relationships and film projects.

52.     Given Plaintiff uncovered Defendant Mark Skipper aka Skip Archimedes story was fake, Plaintiff didn't want to include him in her film Fountain of Youth, not even as a non-speaking actor for B Roll footage and told Defendant Michael Maloy not to use this footage shot in Mexico, and instead Plaintiff would shoot other footage and suggested some stock footage to fill gaps to keep the flow of the film in the meantime. Defendant Michael Maloy accommodated Plaintiff's wishes given she is the Director, Producer and owner of the Film and raw footage.

53.   Originally the film was tentatively called Eternal Youth, which Plaintiff changed to Fountain of Youth in 2016. As the first cut was close to completion, Plaintiff felt the name Fountain of Youth still wasn't right for the film given it was more a Quest to uncover the knowledge of the Fountain of Youth, how to live longer in our lifetime, reduce stress, control emotions, eat and drink better, move, meditate and breathe more efficiently, and why Plaintiff changed the name to Quest For Youth and sent new film name to Defendants via text, which was received and well liked by Defendants.

54.   When Plaintiff was ghosted "cut off" after film was narrated and cut, followed by Defendants contacting Plaintiff's Sales Agent, Plaintiff became extremely concerned and contacted the Copyright Office to file to protect her work [1-13494149971] only to find Defendant Michael Maloy had already filed a Copyright application for her film Quest For Youth, fraudulently failing to disclose to the Copyright office that he was "work made for hire" on his application, which he filed during the period of time Defendant Thomas Harrison told Plaintiff to be patient and not take any action, that he would resolve and insisted Plaintiff send over video releases and chain of title for the project, which Plaintiff did believing Defendants were working towards a resolution getting all paperwork in order ready for film to be released.

55.   During this period between November 2023 and February 2024 when Plaintiff was told by Defendant Thomas Harrison not to take any action and to patiently wait for him to resolve this situation, Defendant Michael Maloy also reached out to film producer Frazer Bailey of Play TV in Australia and asked him if he had any rights to the film Quest For Youth given he has been involved working with Plaintiff on this project from the beginning. Frazer Bailey explained to Plaintiff that he responded to an email by Defendant Michael Maloy that the Plaintiff solely owned the footage and Chain of Title as he had signed over his rights to Plaintiff ready for distribution with him set up to

receive his agreed backend producer fee of 15% when Plaintiff receives payment from distribution.

56.   Frazer Bailey explained to Plaintiff that he believed at the time that this reach out by Defendant Michael Maloy wasn't nefarious, simply an editor doing his due diligence prior to film distribution, which wasn't unusual and why he was happy to share information freely with Defendant Michael Maloy believing he was still working for Plaintiff and in the best interest of her project, not realizing after these emails back and forth that Defendant Michael Maloy had ulterior motives for contacting him and in fact registered Quest For Youth with the Copyright Office attempting to take ownership of the project immediately after correspondence with Frazer Bailey confirming Plaintiff owned the sole rights.

57.   On request by Defendant Michael Maloy, Frazer Bailey also provided information in writing about Defendant Mark Skipper aka Skip Archimedes stating he was a conman, which he shared in confidence only for Defendant Mark Skipper aka Skip Archimedes to contact Frazer Bailey a few days later stating Frazer Bailey was in danger from Plaintiff and it was essential they speak immediately. Frazer Bailey contacted the Plaintiff upset that Defendant Michael Maloy had betrayed his trust sharing information about Defendant Mark Skipper aka Skip Archimedes and didn't understand why Plaintiff's Editor would act in this way.

58.   In or around January 2024, Plaintiff explained to Frazer Bailey that the Editor Defendant Michael Maloy was not who she thought he was and Plaintiff was considering working with another Editor to finish the film ready for Worldwide distribution.

59.   In or around February 2024, Plaintiff sent notice to Defendant Michael Maloy and cc'd Defendant Thomas Harrison with three options on how Petitioner and Defendant Michael

Maloy could conclude their relationship, which was consequently ignored by Defendant Michael Maloy.

60.   In or around February 2024, Plaintiff sent notice via email to Vanguard Talent Agency, David, Guc and Thomas Harrison that they were fired from representing Plaintiff and her projects.

61.   In or around February 2024, Plaintiff sent a Cease and Detest notice via email to Defendants Mark Skipper aka Skip Archimedes, Michael Maloy, Thomas Harrison, David Guc for all Defendants to stop using Plaintiff's raw footage and Copyright and asked for all drives to be returned to Plaintiff, ignored by Defendants.

62.   Plaintiff believes Defendants concocted their plan with a clear intention to harm Plaintiff with a conspiracy to steal Plaintiff's film and raw footage, abusing Plaintiff, creating unnecessary emotional, physical and financial distress, disrupting Plaintiff's business, damaging her reputation, creating financial instability for Plaintiff and her family, and to fraudulently receive payments for Plaintiff's creativity, originality and fixation — a substantial sum on belief, which could return USD$2.5m - USD$5m to Plaintiff paid over three years for global distribution.

63.   Plaintiff has demonstrated a sufficient claim against Defendants, including Michael Maloy and his company Empirical Media/Reality with Defendant deceitfully filing Copyright with the Copyright Office while Plaintiff was patiently waiting for a resolution at the request of Defendant Thomas Harrison on behalf of Vanguard Management owned by David Guc after Plaintiff became aware there was an issue after their friend and co-worker Greg Ellis aka Jonathan Rees contacted each of them, including Mark Skipper aka Skip Archimedes with falsehoods about Plaintiff.

64. Since Plaintiff has known Defendant's Michael Maloy, Thomas Harrison and David Guc and Plaintiff begun working with their respective companies also listed as Defendants, Plaintiff has lived and worked from her residence in Broome County, New York.

65. Defendants are aware Plaintiff is domiciled in New York State, 'Williamson v. Osenton' prior to being introduced to Defendants with meetings held remotely and discussions about Plaintiff's direction for her Documentary Film Quest For Youth conducted via text, email and phone calls.

66. Defendant Michael Maloy is aware drives for Quest For Youth were situated with Plaintiff in Broome County, New York and sent to him from USPS, 200 Washington Avenue, Endicott, NY, 13760 in August 2023 to his home address in Venice, California, which he has still failed to return to Plaintiff as of filing.

67. The claim arose in New York State.

## FIRST CAUSE OF ACTION

**(Direct Copyright Infringement), 17 U.S.C. §501 et seq.**

**Against Defendants**

68. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

69. The Quest For Youth Documentary Film is an original, creative work in which Plaintiff owns a valid copyright.

70. The Film is properly registered with the USCO and Plaintiff has complied with all statutory formalities under the Copyright Act and under regulations published by the USCO.

71. Plaintiff has not granted Defendants a license or the right to use the Film in any manner, nor has Plaintiff assigned any of its exclusive rights in the copyright to Defendant.

72.     Without permission or authorization from Plaintiff and in willful violation of Plaintiff's rights under 17 U.S.C. §106, Defendant improperly and illegally copied, reproduced, distributed, adapted, and/or publicly displayed works copyrighted by Plaintiff thereby violating one of Plaintiff's exclusive rights in its copyrights. Defendant's reproduction of the Film and display of the Raw Footage and/or Trailer, Film Cut on YouTube and other mediums constitutes willful copyright infringement.

73.     Upon information and belief, Defendant willfully infringed upon Plaintiff's copyrighted Film and Raw Footage in violation of Title 17 of the U.S. Code, in that Defendant used, published, communicated, posted, publicized, and otherwise held out to the public for commercial benefit, Plaintiff's original and unique Raw Footage and Film without Plaintiff's consent or authority. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504 in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for each infringement pursuant to 17 U.S.C. § 504(c).

74.     Defendant Michael Maloy filed copyright with the United States Copyright Office on January 12th 2024 providing USCO with deliberately false and misleading information with the intent to acquire ownership of Plaintiffs Raw Footage, Film and Copyright.

75.     As a result of the Defendant's violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505 from Defendant.

76.     As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of her Raw Footage, Film and Copyright pursuant to 17 U.S.C. § 502.

## SECOND CAUSE OF ACTION

**(Sexual Harassment, Gender Discrimination, and Hostile Work Environment under New York State Human Rights Law), N.Y. Exec. Law §§ 290, *et seq*. ("NYSHRL")**

**Against Defendants**

77.     Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

78.     From August 2023, Defendants discriminated against Plaintiff on the basis of her gender in violation of the NYSHRL by subjecting Plaintiff to disparate treatment based upon her gender, including, but not limited to, subjecting her to harassment, emotional distress, and a hostile work environment.

79.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

80.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

81.     Defendants' unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the NYSHRL for which Plaintiff is entitled to an award of punitive damages.

82.     This action is timely because it falls within CPLR § 214-j and is brought during the one-year time period set forth in that section. The claims brought herein allege intentional and negligent acts and/or omissions for physical, psychological, and other injury suffered as a result of conduct that would constitute abuse under New York Penal Law, and such acts and/or omissions were committed against Plaintiff when she was over eighteen years of age.

## THIRD CAUSE OF ACTION

### (Tortious Interference with Contract/Prospective Economic Advantage)

### Against Defendants

83.   Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

84.   In placing false calls and/or sending emails to Plaintiff's sales agent "Big Media" including, but not limited to, on January 17th 2024 and 25th January 2024, her business associates and distribution, directly throughout New York State, California State, United Kingdom and Canada, Defendant interfered with Plaintiff's affiliations and prospective affiliations and business opportunities.

85.   In interfering with her affiliations and prospective affiliations, Defendant acted with the sole purpose of harming Plaintiff or used improper or illegal means that amounted to a crime or independent tort.

## FOURTH CAUSE OF ACTION

### (Intentional Interference with Prospective Business Relations)

### Against Defendants

86.   Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

87.   Plaintiff is a Professional Filmmaker working in the Entertainment Industry as a Director, Producer and Writer, affiliated with multiple talent agencies and production houses throughout New York State and Los Angeles, California.

88.   In her position, Plaintiff is entrusted with cast's private information, video releases with their personal home address, signature, content and personal matters, with her reputation central to her job as a Director and Producer.

89.     Defendant knew that falsely reporting that Plaintiff was "dangerous", "thief", "fraud" "blackmailer" including, but not limited to, emailing "Big Media" on 17th January 2024 and 25th January 2024 with falsehoods would adversely impact her ability to retain and find new work and engaged in such conduct for that purpose.

90.     As a result of Defendant's actions, Plaintiff has been damaged.

91.     Plaintiff demands judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendant for their willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## FIFTH CAUSE OF ACTION

### (Crime of abuse motivated by gender)

### Against Defendants

92.     Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

93.     From August 2023, the above-described conduct of Defendants including, but not limited to Defendants repeated abuse is a "crime of abuse motivated by gender" against Plaintiff.

94.     The above-described conduct of Defendants, including, but not limited to, Defendant's repeated emotional and psychological abuse of Plaintiff in New York State, constitutes a "crime of abuse" against Plaintiff and is a "crime of abuse motivated by gender"

95.     Defendant Corporations enabled Defendant's commission of the crime of abuse motivated by gender.

96.     As a direct and proximate result of the aforementioned crime of gender-motivated abuse, Plaintiff has sustained and will continue to sustain, monetary damages, pain and suffering, and

serious psychological and emotional distress, entitling her to an award of compensatory and punitive damages, injunctive and declaratory relief, attorneys fees and costs, and other remedies as this Court may deem appropriate damages, as set forth in § 10-1104.

## SIXTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

### Against Defendants

97.     Plaintiff repeats and re-alleges the allegations stated above as if fully set forth herein.

98.     From August 2023, Defendant has engaged in the intentional, extreme, and outrageous conduct of abuse, harassment, conspiracy and theft of Plaintiff's Film Quest For Youth.

99.     Defendants also contacted Plaintiff's Business Contacts, Sales Agent "Big Media" including, but not limited to, on 25th January 2024 falsely reporting that Plaintiff was a "thief", "dangerous", "con" and shared exclusive websites about Plaintiff with falsehoods to ruin her reputation and financial stability. Defendant did all of this knowing that their decision to do so would have irreversible, lifelong consequences for Plaintiff and her mental well-being, along with negativity impacting Plaintiff's three minor children who are cared for solely by Plaintiff.

100.    Defendant's conduct was so extreme in degree and so outrageous in character that it goes beyond all possible bounds of decency.

101.    Defendant's sole purpose in stealing Plaintiff's Film and Raw Footage was for financial benefit and to harass and embarrass Plaintiff, ruin her reputation and cause her harm.

102.    Defendant intended to cause severe emotional distress or recklessly disregarded the likelihood that such conduct would tend to cause severe emotional distress. Such outrageous behavior is beyond the limits of decency and is intolerable in a civilized society.

**SEVENTH CAUSE OF ACTION**

**(Stalking/Cyberstalking) 18 U.S.C. § 2261A**

**Against Defendants**

103.  Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

104.  From August 2023 until filing in Federal Court, Defendants with intent to harass and intimidate Plaintiff used an interactive computer service, an electronic communication service, an electronic communication service of interstate commerce, and facilities of interstate and foreign commerce, to engage in a course of conduct that caused, attempted to cause, and would reasonably be expected to cause substantial emotion distress to Plaintiff in violation of Title 18, United States Code, Section 2261A(2).

105.  Defendants intent on destroying Plaintiff, stalked her sharing aspects of her life with an exclusive website sent to her Sales Agent "Big Media" including, but not limited to, on 17th January 2024 and 25th January 2024, and her business associates to harm Plaintiff and ruin her reputation, humiliate and harm Plaintiff with falsehoods and distorted facts ongoing as of filing action against Defendant in Federal Court with Defendants acting in a calculated and vengeful way in Defendant's pursuit to hurt and destroy Plaintiff.

106.  Defendant clearly intent on harming Plaintiff, shared a flyer with falsehoods about Plaintiff to negatively impact Plaintiff by sharing the flyer and website links electronically to Plaintiff's board members, business associates, contractors working with Plaintiff, friends, and other industry people to cancel Plaintiff in the Entertainment Industry and prevent her from distributing her projects.

107.  Defendants intent on revenge, created a hate campaign on social media platforms against Plaintiff, recruiting enablers against Plaintiff to harm, embarrass and reputation savage Plaintiff

and her projects, destroying her business and role as a Producer and Director in the Entertainment Industry.

108.    Plaintiff demands judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendants for their willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

### EIGHTH CAUSE OF ACTION

**(Harassment) NY Penal Law 240.26**

**Against Defendants**

109.  Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

110.  From August 2023 until filing in Federal Court, Defendants with intent to harass and intimidate Plaintiff used an interactive computer service, an electronic communication service, an electronic communication service of interstate commerce, and facilities of interstate and foreign commerce, to engage in a course of conduct that caused, attempted to cause, and would reasonably be expected to cause substantial emotion distress to Plaintiff in violation of NY Penal Law 240.26.

111.  Defendants intent on destroying Plaintiff, harassed and stalked her and shared aspects of her life with an exclusive website sent to her Sales Agent "Big Media" including, but not limited to, on 17th January 2024 and 25th January 2024, and her business associates to harm Plaintiff and ruin her reputation, humiliate and harm Plaintiff with falsehoods and distorted facts ongoing as of filing action against Defendant in Federal Court with Defendants acting in a calculated and vengeful way in Defendant's pursuit to hurt and destroy Plaintiff.

112.   Defendant clearly intent on harming Plaintiff, shared a flyer with falsehoods about Plaintiff to harass and negatively impact Plaintiff by sharing the flyer and website links electronically to Plaintiff's board members, business associates, contractors working with Plaintiff, friends, and other industry people to cancel Plaintiff in the Entertainment Industry and prevent her from distributing her projects.

113.   Defendants intent on revenge, created a hate campaign on social media platforms against Plaintiff, recruiting enablers against Plaintiff to harm, embarrass and reputation savage Plaintiff and her projects, destroying her business and role as a Producer and Director in the Entertainment Industry.

114.    Plaintiff demands judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendants for their willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

### NINETH CAUSE OF ACTION

**(Piracy Under Law of Nations) 18 U.S. Code § 1651**

**Against Defendants**

115.   Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

116.   New York's criminal code are laws designed to protect the intangible property of New York State Residents. Defendants are subject to 17 U.S.C. § 506, for online piracy for willfully infringing on Plaintiff's copyright for financial gain knowing Defendants did not have the right to do so.

117.  Plaintiff demands judgment against Defendants in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendant for their willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## TENTH CAUSE OF ACTION

**(Libel and Slander)**

**Against Defendants**

118.  Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

119.  Including, but not limited to, on 25th January 2024, Defendants made defamatory and disparaging statements oral and/or written about Plaintiff, is in fact false; that, at the very least, the Defendant made the statement and negligent in doing so; and that the disparaging and defamatory statement actually caused damage. First disparaging statement **"April Chandler is an Attempted Murderer"**.

120.  Plaintiff demands judgment against Defendants in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendant for their willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## ELEVENTH CAUSE OF ACTION

### (Libel and Slander)

### Against Defendants

121.  Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

122.  Including, but not limited to, on 25th January 2024, Defendants made defamatory and disparaging statements oral and/or written about Plaintiff, is in fact false; that, at the very least, the Defendant made the statement and negligent in doing so; and that the disparaging and defamatory statement actually caused damage. Second disparaging statement **"April is a Thief"**.

123.  Plaintiff demands judgment against Defendants in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendant for their willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## TWELFTH CAUSE OF ACTION

### (Libel and Slander)

### Against Defendants

124.  Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

125.  Including, but not limited to, on 25th January 2024, Defendants made defamatory and disparaging statements oral and/or written about Plaintiff, is in fact false; that, at the very least, the Defendant made the statement and negligent in doing so; and that the disparaging and

defamatory statement actually caused damage. Third disparaging statement **"April Chandler is Dangerous"**

126.  Plaintiff demands judgment against Defendants in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendant for their willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## THIRTEENTH CAUSE OF ACTION

### (Libel and Slander)

### Against Defendants

127.  Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

128.  Including, but not limited to, on 25th January 2024, Defendants made defamatory and disparaging statements oral and/or written about Plaintiff, is in fact false; that, at the very least, the Defendant made the statement and negligent in doing so; and that the disparaging and defamatory statement actually caused damage. Fourth disparaging statement **"April Chandler is a Fraud"**.

129.  Plaintiff demands judgment against Defendants in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendant for their willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## FOURTEENTH CAUSE OF ACTION

**(Libel and Slander)**

**Against Defendants**

130.  Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

131.  Including, but not limited to, on 25th January 2024, Defendants made defamatory and disparaging statements oral and/or written about Plaintiff, is in fact false; that, at the very least, the Defendant made the statement and negligent in doing so; and that the disparaging and defamatory statement actually caused damage. Fifth disparaging statement **"If you would like to read more information on April Chandler then please check this website out because she has conned so many people and I wouldn't wish for this to happen with your company."**.

132.  Plaintiff demands judgment against Defendants in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendant for their willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## FIFTEENTH CAUSE OF ACTION

**(Libel and Slander)**

**Against Defendants**

133.  Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

134.  Including, but not limited to, on 25th January 2024, Defendants made defamatory and disparaging statements oral and/or written about Plaintiff, is in fact false; that, at the very least,

the Defendant made the statement and negligent in doing so; and that the disparaging and defamatory statement actually caused damage. Sixth disparaging statement **"She was hired as an Executive Producer but she ended up trying to black mail all the people that were involved with it"**.

135.  Plaintiff demands judgment against Defendants in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendant for their willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

<u>**SIXTEENTH CAUSE OF ACTION**</u>

**(Libel and Slander)**

**Against Defendants**

136.  Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

137.  Including, but not limited to, on 25th January 2024, Defendants made defamatory and disparaging statements oral and/or written about Plaintiff, is in fact false; that, at the very least, the Defendant made the statement and negligent in doing so; and that the disparaging and defamatory statement actually caused damage. Seventh disparaging statement **"April Chandler has committed many legal offences regarding this"**.

138.  Plaintiff demands judgment against Defendants in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendant for their willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest,

attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

139.    Plaintiff requests permission from the Court to file such additional causes of action Plaintiff deems necessary as a result of further investigation by Plaintiff and the production of Defendant's discovery responses.

## JURY DEMAND

140.    Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in Plaintiff's favor and against Defendants and grant Plaintiff the following relief:

I. Awarding Plaintiff damages against Defendants in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her emotional distress;

II. Compensatory damages, including past and future economic damages and non-economic damages;

III. Punitive damages, as allowed by law, and any applicable penalties and/or liquidated damages in an amount to be determined at trial;

IV. Attorneys' fees, as allowed by law;

V. All costs associated with this action, including, but not limited to, expert fees, deposition expenses, travel expenses, filing fees, and trial presentation expenses on all claims allowed by law;

VI. Pre-filing, pre-judgment, and post-judgement interest at the highest lawful rate; and

VII. Appropriate injunctive relief against Defendant, including a permanent injunction ordering

Defendants to cease using Plaintiffs copyright and footage of Plaintiffs in Defendants possession.

VIII. Any other appropriate relief at law and equity that this Court deems just and proper.

Signed: _____

Plaintiff

Date: 04/04/2024