UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| APRIL CHANDLER,<br><br>               *Plaintiff*,<br><br>        v.<br><br>MARK SKIPPER aka SKIP ARCHIMEDES; MICHAEL MALOY; THOMAS HARRISON; DAVID GUC; EMPIRICAL MEDIA LLC; EMPIRICAL REALITY LLC; VANGUARD MANAGEMENT TEAM, INC; HARRISON THOMAS GROUP LLC,<br><br>               *Defendants*. | Case No.: 3:24-cv-00206-GTS-ML<br><br>**<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS</u>** |

<u>**MEMORANDUM OF LAW IN SUPPORT**</u>
<u>**OF MOTION TO DISMISS**</u>

 

**BURDICK LAW PLLC**
Benjamin Burdick, Esq.
NDNY Bar No. 703162
217 S. Salina St., 6th Floor
Syracuse, NY 13202
(315) 727-1540
ben@burdick.law
*Counsel for Maloy Defendants*

# TABLE OF CONTENTS

**INTRODUCTION** .................................................................................................................. 3

**FACTS AND PROCEDURAL HISTORY** .......................................................................... 4

    *1.   Plaintiff provides Mr. Maloy with raw footage with which to create a film* .................... 4

    *2.   The parties' working relationship goes south, and Mr. Maloy registers his copyright* ... 5

**ARGUMENT** ........................................................................................................................... 8

    *1.   Personal jurisdiction and venue are improper* ..................................................................... 8

    *2.   Plaintiff does not state a copyright claim* ............................................................................. 9

        *a.   Plaintiff filed prematurely under Fourth Estate* ................................................. 10

        *b.   Plaintiff does not plausibly allege that she owns the copyright* ........................ 12

            i.   Plaintiff does not plausibly allege that she created the film ......................... 13

            ii.   Plaintiff does not plausibly allege that the film was made for hire ............. 14

        *c.   Venue for a copyright claim does not lie in this District* ................................... 16

    *3.   Plaintiff does not state a gender discrimination claim* .................................................... 16

        *a.   Maloy Defendants are not subject to the Human Rights Law* .......................... 17

        *b.   Plaintiff pleads no facts suggesting gender discrimination* ............................. 18

        *c.   The claim is untimely under CPLR § 214-j* ........................................................ 18

    *4.   Plaintiff does not state a tortious interference claim* ....................................................... 19

    *5.   Plaintiff cannot state a claim under New York City law* .................................................. 21

    *6.   Plaintiff fails to state an intentional infliction of emotional distress claim* ................... 22

    *7.   Plaintiff lacks a private right of action under criminal statutes* .................................... 23

    *8.   Plaintiff does not state a defamation claim* ....................................................................... 24

        *a.   Plaintiff does not adequately identify the speaker or listener* ......................... 24

        *b.   Plaintiff does not adequately plead falsity* ......................................................... 25

**CONCLUSION** .................................................................................................................... 26

# INTRODUCTION

Defendants Michael Maloy and Empirical Media, LLC ("Maloy Defendants") respectfully submit this Memorandum of Law in Support of Motion to Dismiss the Second Amended Complaint (ECF No. 99) ("SAC"). Initially, this Court lacks jurisdiction over Maloy Defendants, who reside in California and have taken no actions within New York. And on the merits, of the SAC's twenty-one (21) purported causes of action, not a single one is viable as a matter of law.

First, the copyright infringement claims fail because this suit was prematurely filed, before the copyright was registered. There is a firm statutory bar on commencing an action before registering a copyright, and a plaintiff cannot evade that bar with post-registration amendments. Moreover, even if the suit had been timely filed, it would fail to allege a valid copyright because it is premised on the factually unsupported legal conclusion that the allegedly copyrighted work was made by Mr. Maloy "for hire." Further, venue would be improper under the relevant statute.

Next, Plaintiff's newly added claims are a grab bag of unrelated theories that likewise fail to state a claim. The claim of workplace gender discrimination in employment is not alleged to have occured in a workplace; in any event, it does not rely on a single non-conclusory factual allegation. The claims of intentional infliction of emotional distress and tortious interference with business relationships similarly fail to plead factual matter—except to the extent they accuse Mark Skipper, *not* Maloy Defendants or any other defendant, of sending an unkind email. Plaintiff's claims of criminal violations are misplaced in this civil action. And finally, Plaintiff's defamation claims fail to identify the speaker or the listener; nor do they plead facts demonstrating falsity, an element of the claim upon which Plaintiff bears the burdens of pleading and proof.

For the foregoing reasons, and as explained more fully below, the Court should dismiss this case with prejudice.

**FACTUAL STATEMENT**

The allegations in the SAC, like those in the FAC, are not chronological and can be confusing or contradictory. This factual statement represents Maloy Defendants' good-faith effort to draw a coherent narrative from the SAC. At the motion to dismiss stage, the court must "accept as true all factual allegations and draw from them all reasonable inferences." *Edwards v. Sequoia Fund, Inc.,* 938 F.3d 8, 12 (2d Cir. 2019) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)).[1] The Court is "not required to credit conclusory allegations or legal conclusions couched as factual… allegations." *Edwards*, 938 F.3d at 12.

1. ***Plaintiff provides Mr. Maloy with raw footage with which to create a film***

Plaintiff alleges that she "is the owner of the film Quest for Youth (the 'film') previously called Fountain of Youth." SAC ¶ 1. The film allegedly concerns "how to live longer in our lifetime, reduce stress, control emotions, eat and drink better, move, meditate, and breathe more efficiently." SAC ¶ 60. The film is allegedly "unique" because of "Plaintiff's raw footage… [and] British accent for the narration." SAC ¶ 1. While Plaintiff refers several times to "[her] raw footage," *see, e.g.*, SAC ¶¶ 1, 9, she does not explain how the footage came to be "hers"; she nowhere alleges that she personally shot, directed, or otherwise created the footage in question in the first place. To the contrary, while the allegations and timeline are vague at best, the SAC states that the film was a "post production project[] already filmed… which had already been cut and distribution offered to Plaintiff with agreement signed in November 2018," which seems to indicate that Plaintiff purchased or otherwise obtained the film from its creator around that time.

---

[1] Therefore, Defendants draw the following facts from the SAC, without admitting the truth of anything contained therein. In a different procedural posture, Maloy Defendants would deny many of the facts stated below.

SAC ¶ 44; *see* SAC ¶ 62 ("Frazer Bailey… signed over his rights to Plaintiff"); *but see* SAC ¶ 60 (stating that Plaintiff changed name of film in or around 2016).

Plaintiff further alleges that in January 2023, she met "Defendant Michael Maloy owner of Empirical Media" and that he was "introduced to [her] and film project Fountain of Youth as a 'work made for hire' editor…" SAC ¶ 45. Plaintiff states that "according to him, [Mr. Maloy is] a multi Emmy Winning Film Veteran with decades experience as a Consulting Executive Producer and Editor with a successful production company." SAC ¶ 35. The SAC does not explain what it means to be "introduced… as a 'work made for hire' editor." It does not allege that Plaintiff employed Mr. Maloy or executed a written agreement to enter a work-for-hire relationship. *Cf.* 17 U.S.C. § 101 (defining statutory term "work made for hire" as (1) "a work prepared by an employee within the scope of his or her employment," or a work meeting particular other criteria including that "the parties [have] expressly agree[d] in a written instrument signed by them that the work shall be considered a work made for hire").

Some seven months after explaining her general "vision" and "goals" to Mr. Maloy, Plaintiff "sent [him] the 4 drives… with all raw A and B roll footage for film project FOUNTAIN OF YOUTH…" SAC ¶¶ 46-47. Plaintiff alleges that Mr. Maloy performed work related to the film "in return for monetary gain." SAC ¶ 12. The SAC does not describe the work Mr. Maloy performed, except to say that he "found" approximately 10% of the footage in the film "to fill gaps while contracted to work with Plaintiff." SAC ¶ 1. Plaintiff does not allege that she ever possessed a digital or physical (or other) copy of the film as revised and modified by Mr. Maloy.

2. ***The parties' working relationship goes south, and Mr. Maloy registers his copyright***

Plaintiff alleges that after the modified film was complete, "Defendants contacted Plaintiff's Sales Agent that Plaintiff didn't have authorization to sign the distribution agreement."

SAC ¶ 14.  Although Plaintiff states that "an agreement was signed by Plaintiff with Big Media," she provides no further details concerning the agreement, such as its date of execution, the contract price, or what it substantively required of the parties.  *See* SAC ¶ 13.  Plaintiff hypothesizes that "global distribution" of the film could have returned "USD $2.5m – USD$5m", but does not explain where this figure comes from, and does not allege that she had a contract guaranteeing any such amount.  SAC ¶ 69.

Plaintiff further alleges that "Defendants also contacted Big Media and [Plaintiff's] business associates with exclusive websites with derogatory false information and distorted facts."  SAC ¶ 15; *see id.* ¶ 9.  Although Plaintiff generally asserts that "Defendants" took these actions, she elsewhere clarifies that Defendant Skipper sent the "derogatory false information… and websites" in question.  SAC ¶ 55.  Mr. Skipper's connections, if any, to the other defendants are unclear from the SAC; he is "not in the Entertainment Industry" and was "not known by the other Defendants," as he "liv[ed] thousands of miles away in the Countryside of Norfolk."  SAC ¶ 54.  He is the only defendant who is alleged to have contacted Big Media.  *See* SAC ¶ 55.

The websites shared by Mr. Skipper allegedly state that "Plaintiff is a 'blackmailer', a 'con', [and] a 'thief'".  SAC ¶ 15.  There is no allegation that any defendant created the websites.  Plaintiff alleges that as a result of these communications, "Big Media pull[ed] [the] film from their catalogue."  SAC ¶ 15.

Mr. Maloy registered a copyright in Quest for Youth in January 2024.  SAC ¶ 4.  Plaintiff does not allege that Mr. Maloy or any defendant registered a copyright in any of the raw footage that she provided, nor in the original version, "Fountain of Youth"—only that he copyrighted the complete film, Quest for Youth.  Plaintiff "believes" Mr. Maloy was "motivated by gender," but offers no basis for this belief.  *See* SAC ¶¶ 10, 63.

Plaintiff thereafter filed to register a competing copyright claim in Quest for Youth with the Copyright Office. SAC ¶ 2. Plaintiff then almost immediately filed this lawsuit, alleging infringement of copyright, although the Copyright Office had not yet acted on her application and would not do so for several months. SAC ¶¶ 2, 4; ECF Nos. 38, 42.

Around the same time, "Plaintiff sent a Cease and Detest [sic] notice… for all Defendants to stop using Plaintiff's raw footage and Copyright…" SAC ¶ 68. Plaintiff does not allege facts tending to show that any defendant "used" either her raw footage or the complete film following this notice. Nor does she allege facts tending to show that any defendant has attempted to market or otherwise profit from Quest for Youth since Mr. Maloy registered the copyright. *Cf.* SAC ¶ 81 (alleging, upon information and belief, that "Defendant [sic] used, published, communicated, posted, publicized, and otherwise held out to the public for commercial benefit, Plaintiff's original and unique Raw Footage and Film," but failing to state which defendant did so, when, how, to whom, or for how much money). "Plaintiff believes Defendants concocted their plan… to fraudulently receive payments for Plaintiff's creativity, originality and fixation." SAC ¶ 69. Plaintiff again offers no factual basis for this belief, and in particular, does not allege that any defendant has made a single dollar in connection with the film.

**ARGUMENT**

The Court should dismiss the Second Amended Complaint. Because Plaintiff does not plead facts showing any contacts between Defendants and New York State, the Court lacks jurisdiction over any claim. Further, the copyright claims are both procedurally improper and substantively meritless. The workplace gender discrimination, intentional infliction of emotional distress, and tortious interference claims are based on legal conclusions unmoored from factual allegations. The criminal claims are not properly before the Court in this civil case. And the defamation claims fail to identify the speaker or the listener, and do not plead falsity.

### 1. *Personal jurisdiction and venue are improper*

Maloy Defendants do not reside in New York. SAC ¶¶ 34, 41. Under the federal Constitution, "[i]n order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 264 (2017). The Supreme Court has made clear that "'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" *Id.* at 262 (alterations in original).[2]

Here, Plaintiff identifies *no* action that either Mr. Maloy or Empirical Media took "in the forum State" and relating to this case. It is undisputed that Mr. Maloy has at all relevant times been located in California. His sole connections to New York are that he was "aware Plaintiff is

---

[2] Before exercising jurisdiction over a nondomiciliary, a federal court must first find "a statutory basis for jurisdiction" under the forum State's long-arm statute. *See, e.g.*, *Nat'l Union Fire Ins. Co. v. UPS Supply Chain Sols., Inc.*, 74 F.4th 66, 72 (2d Cir. 2023). As Maloy Defendants lack *any* relevant contacts, it is simpler to observe that the Court lacks jurisdiction under the Due Process Clause. Still, "New York's long-arm statute does not reach [as] far" as the Constitution allows. *Id.* at 66. In particular, "New York case law establishes that making defamatory statements outside of New York about New York residents does not, without more, provide a basis for jurisdiction…" *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 253 (2d Cir. 2007); *see* CPLR 302(a)(2)-(3).

domiciled in New York State," and that she mailed him items from this State.[3] SAC ¶¶ 72-73. That is insufficient as a matter of law: "a defendant's mere knowledge that a plaintiff resides in a specific jurisdiction would be insufficient to subject a defendant to specific jurisdiction in that jurisdiction if the defendant does nothing in connection with the tort in that jurisdiction." *Waldman v. PLO*, 835 F.3d 317, 338 (2d Cir. 2016).

Plaintiff does not suggest that Mr. Maloy did anything "in connection with the tort[s] in th[is] jurisdiction." *See id.* Because she identifies *no* relevant contacts between the defendants and the forum beyond their "mere knowledge that [she] resides [here]," *see id.*, that ends the matter. *See Bristol-Myers*, 582 U.S. at 262.

For similar reasons, notwithstanding Plaintiff's conclusory assertions regarding venue, *see* SAC ¶ 26, it is apparent from the factual allegations that "a substantial part of the events or omissions giving rise to the claim" did *not* occur in New York State. *Cf.* 28 U.S.C. § 1391(b)(2). Venue for the copyright claims is subject to a different statute, discussed *infra* p. 16.

Therefore, the Court should dismiss the case in its entirety for lack of jurisdiction and venue. Should the Court reach the merits, each and every claim fails, as explained below.

### 2. *Plaintiff does not state a copyright claim*

Plaintiff's first six causes of action each allege some form of copyright infringement. These causes of action are procedurally improper: this case was commenced prior to any action by the Copyright Office on Plaintiff's application, and that failure cannot be cured by amendment. *See*

---

[3] Plaintiff also avers that "[a]ll agreements and contracts executed by Plaintiff are agreed under New York State Law." SAC ¶ 75. But "choice of law and choice of forum are altogether separate matters," and a "provision that New York law shall govern… [is not by itself] sufficient to confer jurisdiction over defendants." *Bank of Tokyo-Mitsubishi v. Kvaerner a.s.*, 243 A.D.2d 1, 5 (1st Dep't 1998). Moreover, Plaintiff's general statement about "[a]*ll* agreements and contracts" that she has ever executed is implausible on its face. *See* SAC ¶ 75 (emphasis added). Plaintiff does not appear to plead that Maloy Defendants were parties to a specific contract containing such a clause; after all, this is not a breach of contract action.

*M.V. Music v. V.P. Records Retail Outlet, Inc.*, 653 F. Supp. 3d 31, 42 (E.D.N.Y. 2023). They are also substantively meritless: Plaintiff fails to plausibly plead that she owned the copyright to Quest for Youth. Despite multiple opportunities to do so, she still fails to plead facts in support of her legal conclusion that Quest for Youth was a "work made for hire." *See generally Cmty. For Creative Non-Violence v. Reid*, 490 U.S. 730 (1989). The Court should therefore dismiss the action with prejudice.

### a. *Plaintiff filed prematurely under* Fourth Estate

With limited exceptions not relevant here, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made… [or] refused" by the Copyright Office. 17 U.S.C. § 411(a). The registration "provision requires action by the Register [of Copyrights] before a copyright claimant may sue for infringement." *Fourth Estate Pub. Ben. Corp. v. Wall-Street.com*, LLC, 586 U.S. 296, 303 (2019). The Supreme Court has squarely "reject[ed]" the "application approach" under which a suit could be filed "when a copyright owner [has] submit[ted] the application, materials, and fee required for registration." *See id.* at 302; *cf.* ECF No. 38 at 2 (citing mistaken "understanding under Federal Law, [that] one is allowed to file a complaint against Defendants in Federal Court for Copyright Infringement with the Copyright application at any stage of the registration process"). Rather, § 411(a)'s condition precedent to litigation is satisfied *only* "when the Register has registered a copyright after examining a properly filed application." *Fourth Estate*, 586 U.S. at 309.

Following *Fourth Estate*, "[c]ourts in this Circuit … have routinely rejected the argument advanced by Plaintiffs that amending the complaint can cure a failure to register a copyright before initiating a copyright infringement lawsuit." *M.V. Music*, 653 F. Supp. 3d at 42. In one oft-cited case, *Malibu Media, LLC v. Doe*, 2019 U.S. Dist. LEXIS 56578, *2 (S.D.N.Y. April 2, 2019), the plaintiff "fail[ed] to allege that registration or preregistration of the five copyright claims at issue

had 'been made' prior to the filing of th[e] action, as required by *Fourth Estate*." Nevertheless, "Plaintiff argue[d] that the Amended Complaint should not be dismissed because the intervening registration of Plaintiff's copyrights now render[ed] the action compliant with Section 411(a)'s registration requirement." *Id.* at \*6-\*7. The court disagreed, holding that "the Amended Complaint—and the entire action—must be dismissed …. even though it would save Plaintiff the trouble of re-filing…" *Id.* at \*8; *see id.* at \*1. The court explained that:

> Plaintiff's argument would make a meaningless formality out of *Fourth Estate*'s requirement that an application be approved prior to filing suit. Were it correct, a plaintiff could file suit at any time, notwithstanding Section 411(a)'s precondition, and simply update the complaint when registration finally occurred. That would undermine Congress's choice to "maintain[] registration as prerequisite to suit." *Fourth Estate*, 139 S. Ct. at 891. Enforcing Congress's choice means that an amended complaint alleging compliance with Section 411(a) cannot relate back to a time before that compliance was achieved.

*Id.* at \*7 (alteration in original).

While the Second Circuit has not explicitly weighed in, *Malibu Media* has been cited dozens of times for the proposition that "a prematurely filed suit must be dismissed notwithstanding a plaintiff's post-registration amendment." *See, e.g.*, *M.V. Music*, 653 F. Supp. 3d at 42. The undersigned is aware of no contrary authority in this Circuit.

This action is plainly untimely. It was initiated on February 12, 2024. ECF No. 1; SAC ¶ 3. Although that was a few days after Plaintiff's *application* for registration was filed on February 8, it was long before the Copyright Office granted registration after "a two month investigation." SAC ¶¶ 2-4; ECF No. 38 (acknowledging Plaintiff had not received certificate of copyright as of April 9, 2024); ECF No. 42 ("completing registration" as of April 15, 2024). Therefore, Plaintiff "instituted" this action before "preregistration or registration of the copyright claim ha[d] been made… [or] refused" by the Copyright Office, in violation of 17 U.S.C. § 411(a); her application

without prior registration is insufficient. *See Fourth Estate*, 586 U.S. at 309. It is no answer that Plaintiff *eventually* registered a copyright, *cf.* SAC ¶ 78, because her noncompliance at the time of filing cannot be cured by later amendment. *See, e.g.*, *M.V. Music*, 653 F. Supp. 3d at 42. Because "the liberality [the Court] extend[s] to pro se litigants does not license failure 'to comply with relevant rules of procedural and substantive law,'" *United States v. Hage*, 74 F.4th 90, 94 (2d Cir. 2023), the copyright claims must be dismissed.

### b. ___Plaintiff does not plausibly allege that she owns the copyright___

"[T]he two elements of copyright infringement are '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.*, 290 F.3d 98, 109 (2d Cir. 2002). Here, Plaintiff does not allege ownership of a valid copyright in Quest for Youth.

"[C]opyright ownership 'vests initially in the author or authors of the work.'" *Reid*, 490 U.S. at 737 (quoting 17 U.S.C. § 201(a)). "As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression…" *Id.* "The Act carves out an important exception, however, for 'works made for hire.'" *Id.* "Because a 'work made for hire' is a statutory exception to the general rule of author-ownership of copyright, the party claiming the exception bears the burden of proving that the exception applies." *Horror Inc. v. Miller*, 15 F.4th 232, 241 (2d Cir. 2021). To survive a motion to dismiss, the plaintiff must "allege plausibly their authorship of the [w]ork, under either the traditional authorship or work-made-for-hire approaches." *See Gentile v. Crededio (Gentile I)*, 2023 U.S. Dist. LEXIS 57057, *24-*25 (S.D.N.Y. Mar. 31, 2023).

Plaintiff does not appear to allege that she "actually create[d]" Quest for Youth. *Cf. Reid*, 490 U.S. at 737. Instead, she claims that she owns the copyright to certain raw footage,[4] which she alleges Mr. Maloy transformed into a revamped, marketable movie for her, including by editing together "stock footage" which she does not own. *See, e.g.*, SAC ¶¶ 1, 46-47. But Mr. Maloy's contributions and revisions are, of course, separately copyrightable creative works. *E.g.*, *Gentile v. Doyle (Gentile II)*, 2024 U.S. Dist. LEXIS 1369, *14-*16 (S.D.N.Y. Jan. 2, 2024) (defendant "made copyrightable contributions" where he "'assisted Plaintiffs in drafting'" a script and "'revis[ed],' 'adapt[ed],' 'develop[ed],' and 'contributed'" to the same) (alterations in original); *cf.* SAC ¶ 35 (Mr. Maloy was "a multi Emmy Winning Film Veteran with decades experience as a Consulting Executive Producer and Editor with a successful production company" whom Plaintiff sought out for his creative abilities). Although Plaintiff claims to have given Mr. Maloy "direction… on the phone and via text explaining her vision for the film and what [she] had attempted to achieve… and her goals for the film," she does not suggest that Mr. Maloy's work consisted of "rote or mechanical transcription" devoid of "intellectual modification." *See Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.*, 290 F.3d 98, 107 (2d Cir. 2002); *Gentile II*, 2024 U.S. Dist. LEXIS 1369, *14-*16 (defendant was author with respect to his copyrightable contributions, notwithstanding plaintiffs' claims "that these contributions 'were done at Plaintiffs' explicit direction'"). Her general vision and goals are uncopyrightable ideas. *See, e.g.*, *N.Y. Mercantile Exch., Inc. v. Intercontinental Exchange, Inc.*, 497 F.3d 109, 116 (2d Cir. 2007) ("ideas

---

[4] Plaintiff does not allege that Mr. Maloy's use of her raw footage infringed her rights in the raw footage *per se*. Nor can she, because (1) she does not allege to have registered a copyright in that footage, *see supra* pp. 10-11 (discussing registration requirement); and (2) she authorized Mr. Maloy to use the footage, *see* SAC ¶¶ 46-47 (alleging that Plaintiff voluntarily sent Mr. Maloy drives containing footage after giving him direction about her vision for what to do with it).

cannot be copyrighted").  Therefore, Plaintiff's only alleged claim to authorship is through the work-for-hire doctrine.

### ii. *Plaintiff does not plausibly allege that the film was made for hire*

"[A] work is 'for hire' under two sets of circumstances."  *Reid*, 490 U.S. at 738.  The work must either (1) be "prepared by an employee within the scope of his or her employment," or (2) if prepared by an independent contractor, be made pursuant to a "written instrument signed by [the parties]" in which they "expressly agree… that the work shall be considered a work made for hire." *Id.*; *see also id.* at 743 ("a work for hire can arise through one of two mutually exclusive means, one for employees and one for independent contractors"); 17 U.S.C. § 101.  Employment status is determined by the "general common law of agency."  *Reid*, 490 U.S. at 751.  If a work is made for hire, then copyright vests not in the creator of the work under the general rule, but instead in the "person for whom the work was prepared."  17 U.S.C. § 201(b).

Plaintiff emphatically alleges that Quest for Youth was a "work made for hire." SAC ¶¶ 6, 12, 19, 45, 61, 63.  She has effectively abandoned the "traditional authorship … approach[]" in favor of the "work-made-for-hire approach[]".  *See Gentile I*, 2023 U.S. Dist. LEXIS 57057 at *25.  She therefore "bears the burden" of pleading (and ultimately proving) that Mr. Maloy was either her employee, or that a written agreement expressly designated Quest for Youth as a "work for hire."  *See Horror Inc.*, 15 F.4th at 241.

She has not remotely met that burden.  Because "work made for hire" is a statutorily defined term, *see* 17 U.S.C. § 101, Plaintiff's bare assertion is a legal conclusion that is not entitled to any weight.  *See Edwards*, 938 F.3d at 12 (2d Cir. 2019) (court is "not required to credit conclusory allegations or legal conclusions couched as factual… allegations"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions… Factual allegations must be

enough to raise a right to relief above the speculative level."); *see also, e.g.*, *McCullough v. Graves*, 2024 U.S. Dist. LEXIS 22894, *6-*7 (N.D.N.Y. Feb. 9, 2024) (a complaint "phrased in conclusory terms" that the defendants "lied," "falsified," and "fabricated" statements was "not nearly enough to unlock discovery, even for a *pro se* litigant").

Nor are there facts in the SAC permitting the "reasonable inference[]" that Quest for Youth was "made for hire," even taking into account "the liberality [the Court] extend[s] to pro se litigants." *See Edwards*, 938 F.3d at 12; *Hage*, 74 F.4th at 94. Again, "a work for hire can arise through one of two mutually exclusive means, one for employees and one for independent contractors." *Reid*, 490 U.S. at 743. The Amended Complaint is devoid of facts tending to show that Mr. Maloy was Plaintiff's common-law employee; to the contrary, it indicates that he was "contracted to work with Plaintiff." SAC ¶ 1; *see Gentile I*, 2023 U.S. Dist. LEXIS 57057 at *21-*24 (discussing factors to consider in employment test). Nor does Plaintiff plead that there is a "written instrument signed by [the parties]" in which they "expressly agree… that the work shall be considered a work made for hire."[5] *Reid*, 490 U.S. at 738; *see Gentile I*, 2023 U.S. Dist. LEXIS 57057 at *19 ("only the first prong is even potentially applicable because Plaintiffs do not allege that [Defendant] signed a written instrument designating the draft script a work-made-for-hire").

Therefore, Plaintiff has failed to plead facts in support of the only theory she advances in favor of her copyright ownership—that Quest for Youth was a "work made for hire." The SAC's copyright claims must be dismissed.

---

[5] Plaintiff has previously stated, albeit not under oath, that such an agreement existed. ECF No. 53 at 42-45. But after Mr. Maloy declared under penalty of perjury that the alleged agreement was fabricated, *see* ECF No. 54-1 ¶¶ 10-14, Plaintiff (wisely) chose to omit any reference to the purported agreement in the SAC. *Cf.* ECF No. 34 (explicitly cautioning Plaintiff "that any amended pleading will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court").

     *c.*       ***Venue for a copyright claim does not lie in this District***

These claims are so meritless that judicial economy justifies dismissing them without further delay. But if a copyright claim somehow survived this motion to dismiss, it would have to be substantively litigated on the West Coast.[6] Plaintiff "rel[ies] on the general venue statute, § 1391, for [her] argument, ignoring that a specific venue statue, § 1400, governs copyright actions." *Sygall v. Pitsicalis*, 2018 U.S. Dist. LEXIS 194562, *4 (S.D.N.Y. Nov. 4, 2018) (citing *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 55 n.2 (2013)); *see Lumiere v. Mae Edna Wilder, Inc.*, 261 U.S. 174, 176 (1923) ("The venue of suits for infringement of copyright is not determined by the general provision governing suits in the federal district courts"); *cf.* SAC ¶ 26.

In fact, the proper venue for a copyright infringement suit is "in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). As noted *supra* pp. 8-9 with respect to jurisdiction, Plaintiff does not allege that any defendant "resides or may be found" in the Northern District of New York. Instead, she concedes that both Mr. Maloy and Empirical Media reside in California. SAC ¶¶ 34, 41; *cf. TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258 (2017) (holding that "residence" for purposes of the patent venue statute, § 1400(b), refers only to state of incorporation). Therefore, the copyright claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(3).

    *3.*  ***Plaintiff does not state a gender discrimination claim***

Moving on from copyright, Plaintiff's Seventh Cause of Action alleges "Sexual Harassment, Gender Discrimination, and Hostile Work Environment under New York State Human

---

[6] Defendants reserve any rights they may have to compel arbitration of any surviving claims. *See, e.g.*, *Boustead Sec., LLC v. Leaping Grp. Co., Ltd.*, 656 F. Supp. 3d 447, 453 (S.D.N.Y. 2023) ("pre-answer motion practice does not constitute the sort of significant litigation that weighs in favor of finding that there has been a waiver of an arbitration agreement"); *cf.* ECF No. 26 at 8.

Rights Law [NYSHRL]." This claim fails for at least three reasons. First, Maloy Defendants are not employers subject to the NYSHRL. Second, Plaintiff pleads no facts in support of her subjective belief that she was discriminated against. Third, the SAC establishes that any claim under the NYSHRL is untimely.

### a. *Maloy Defendants are not subject to the Human Rights Law*

The NYSHRL prohibits certain "unlawful discriminatory practices" relating to gender in the workplace[7] by "an employer or licensing agency," "an employment agency," "a labor organization," or "any joint labor-management committee controlling apprentice training programs." N.Y. Exec. L. § 296(1), (1-a). Where the NYSHRL prohibits conduct by certain entities, the statute means what it says: it does not apply to other entities. *See, e.g.*, *N.Y.C. Transit. Auth. v. Exec. Dep't, Div. of Human Rights*, 89 N.Y.2d 79, 86 (1996) ("By its terms, the prohibition is aimed only at employers..."); *see also Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 136 (2d Cir. 1999) ("It is inherent in the definition of a … hostile work environment … that the person against whom the hostility is directed must be in an employment relationship with the employer.")[8]

As noted above with respect to the copyright claim, Plaintiff has not offered any facts suggesting the existence of an employment relationship between her and any Defendant. Therefore, the hostile work environment claim must be dismissed.

---

[7] The law also prohibits discrimination in a host of other contexts, none of which are arguably applicable here. *See, e.g.*, § 296(2) (public accommodations); § 296(2-a) (public housing); § 296(9) (fire departments).

[8] Although relatively recent amendments have expanded the scope of the NYSHRL to protect some *non-employees*, the statute still does not cover entities that are not *employers*, and the plaintiff in such a case must be "providing services pursuant to a contract *in the* [*employer's*] *workplace*." *See* N.Y. Exec. L. § 296-d (emphasis added). Section 296-d protects workers, even those who are not technically employees, from employers; but it does not protect *everyone* from *everyone else*. Here, there is no allegation that Mr. Maloy or Empirical Media ran a "workplace" in which Plaintiff "provided services."

### b. *Plaintiff pleads no facts suggesting gender discrimination*

It is well established that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "a discrimination complaint," like any other complaint, "must at a minimum assert nonconclusory factual matter sufficient to 'nudge[] [its] claims . . . across the line from conceivable to plausible' to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (alterations in original, internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 680). Without more, a "plaintiff['s] subjective belief that they were subjected to a hostile work environment based on their membership or association with a protected class—'however strongly felt—is insufficient to satisfy [their] burden at the pleading stage.'" *Morris v. New York State Police*, 268 F. Supp. 3d 342, 368 (N.D.N.Y. 2017) (alterations in original); *see also Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 330 (S.D.N.Y. 2020) (same).

Here, Plaintiff alleges that she "believes Defendants acted in this way due to her Gender." SAC ¶ 10; *see* SAC ¶ 63. She offers no facts in support of this "subjective belief," which, "however strongly felt[,] is insufficient to satisfy [her] burden at the pleading stage." *Morris*, 268 F. Supp. 3d at 368. Therefore, the cause of action must be dismissed.

### c. *The claim is untimely under CPLR § 214-j*

Plaintiff alleges that her Human Rights Law claim "falls within CPLR § 214-j." SAC ¶ 131. That statute "created a one-year revival period, starting November 24, 2022, during which adult survivors of sexual assault could sue their abusers despite the expiration of the previously applicable statutes of limitation." *Carroll v. Trump*, 650 F. Supp. 3d 213, 218 (S.D.N.Y. 2023). That period therefore ended on November 23, 2023—more than two months before this lawsuit was filed. See SAC ¶ 3 (lawsuit filed Feb. 12, 2024). By pleading that the claim "falls within

CPLR § 214-j," Plaintiff admits that the statute of limitations has otherwise expired. Thus, because this claim is not "brought during the one-year time period set forth in [CPLR § 214-j]"—notwithstanding Plaintiff's assertion to the contrary, SAC ¶ 131—it is therefore untimely.

### 4. *Plaintiff does not state a tortious interference claim*

Plaintiff's Eighth and Ninth Causes of Action allege that by sending certain emails, "Defendants" committed tortious interference with contract and tortious interference with prospective business relations. These claims fail against Maloy Defendants principally because only one person is alleged to have sent the offending emails: Mark Skipper.

The elements of tortious interference with contract are "[1] the existence of a valid contract between the plaintiff and a third party, [2] defendant's knowledge of that contract, [3] defendant's intentional procurement of the third-party's breach of the contract without justification, [4] actual breach of the contract, and [5] damages resulting therefrom." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 126-27 (2d Cir. 2019) (alterations in original) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996)). To survive a motion to dismiss, a complaint must "sufficiently plead the existence of a contract" by "providing… factual allegations regarding, *inter alia*, the formation of the contract, the date it took place, and the contract's major terms…" *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 104 (2d Cir. 2012). A claim for tortious interference with prospective economic relations does not require the present existence of a contract, but it does require the plaintiff "to identify a specific business relationship with a third party." *Stephens v. Trump Org. LLC*, 205 F. Supp. 3d 305, 311 (E.D.N.Y 2016) (citing *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 115 (2d Cir. 2010)). In any event, damages must be "susceptible to proof with certainty." *See Lama Holding*, 88 N.Y.2d at 425 (citing *Kenford Co. v. County of Erie*, 67 N.Y.2d 257, 261 (1986)). In particular, damages may not be

awarded based on "projections" that require a "multitude of assumptions," especially assumptions about "the whim of the general public." *Kenford*, 67 N.Y.2d at 262.

Plaintiff fails to allege Maloy Defendants' "intentional procurement of [a] third-party's breach of [a] contract." *Cf. Rich*, 939 F.3d at 127. Although she alleges that "Defendant" "plac[ed] false calls and/or sen[t] emails to Plaintiff's sales agent Big Media," *see* SAC ¶¶ 133, 138, she specifically tells us who sent the allegedly false emails: Mark Skipper. SAC ¶ 55. There does not appear to be any more specific allegation that any defendant was in phone contact with Big Media. Plaintiff does not allege Mr. Maloy was involved in drafting Mr. Skipper's email, and offers no coherent reason Maloy Defendants should be liable for the email's contents.

Setting aside their failure to allege any action by Maloy Defendants, the claims fail on their own terms. Plaintiff states in conclusory fashion that "an agreement was signed by Plaintiff with Big Media ready for Worldwide distribution," SAC ¶ 13, but fails to say anything about the contract's "formation… the date it took place, [or] the contract's major terms." *Cf. Valley Lane Indus.*, 455 F. App'x at 104.[9] Similarly, she nowhere specifically alleges that the contract was breached; although she states that "Big Media pull[ed] Plaintiff's film from their catalogue," her failure to plead the terms of the contract leaves no hint as to whether Big Media's alleged actions constituted a breach. *See* SAC ¶ 15. And unsurprisingly, her tortious interference with prospective business relations claim fails "to identify a specific business relationship with a third party," instead alleging generalized damage to her "reputation" and "ability to distribute her film [and] retain and find new work." *See Stephens*, 205 F. Supp. 3d at 311. Taken together, these vague allegations fall far short of the mark.

---

[9] Oddly, Plaintiff alleges that she has the "legal right to walk away from *any project* for any reason." SAC ¶ 58 (emphasis added). That strongly implies that her projects are *not* governed by legally binding contracts.

Finally, Plaintiff's assertion that "global distribution" "could return USD$2.5m – USD$5m to Plaintiff paid over 3 years" is not supported by any concrete allegations such as a contract price term. SAC ¶ 69. The expected revenues can only be based on a "multitude of assumptions"—likely including speculation about the expected popularity of the film, which is naturally subject to "the whim of the general public." *See Kenford*, 67 N.Y.2d at 262. Plaintiff's dream that her movie would make her a millionaire is not a basis for awarding money damages in the absence of a concrete basis, "susceptible of proof with certainty," for believing her dream would come true, *See id.* at 261. For these reasons, the tortious interference claims must be dismissed.

5. ***Plaintiff cannot state a claim under New York City law***

Plaintiff's Tenth Cause of Action invokes "§ 10-1104." SAC ¶ 145. That appears to be a reference to New York City's Victims of Gender-Motivated Violence Protection Law ("VGMVPL"), which creates a cause of action for victims of a "crime of violence motivated by gender." N.Y.C. Admin. Code § 10-1104. In the context of the New York City Human Rights Law ("NYCHRL"), the law is clear that "tangential contacts with the city" are not enough; rather, a "nonresident plaintiff must demonstrate that the alleged discriminatory conduct had an 'impact' within the city," which "confines the protections of the NYCHRL to those who are meant to be protected—those who work in the city." *Hoffman v. Parade Publs.*, 15 N.Y.3d 285, 290-91 (2010). Because the "jurisdictions and powers of the city" are limited to "the five boroughs," the same rule must apply to the VGMVPL. *See id.* (citing N.Y.C. Admin. Code § 2-201). Plaintiff is, of course, not a New York City resident. SAC ¶ 30. Because she offers no facts connecting this case with New York City in any way whatsoever, the Tenth Cause of Action must be dismissed.[10]

---

[10] Even if N.Y.C. Admin. Code § 10-1104 applied, this cause of action would still fail. As noted above, the statute prohibits "crime[s] of *violence*," which requires that the alleged "conduct present[] a serious risk of *physical* injury to another." N.Y.C. Admin. Code § 10-1103 (emphasis added). Plaintiff offers no allegations suggesting that any

### 6. *Plaintiff fails to state an intentional infliction of emotional distress claim*

"The tort [of intentional infliction of emotional distress (IIED)] has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993). "[T]he 'requirements of the rule are rigorous, and difficult to satisfy'… Indeed, of the [IIED] claims considered by [the New York Court of Appeals], every one has failed because the alleged conduct was not sufficiently outrageous." *Id.* at 122; *accord Chanko v. Am. Broadcasting Cos.*, 27 N.Y.3d 46, 57 (2016). Thus, IIED is "an extremely disfavored cause of action under New York law that is routinely dismissed on pre-answer motion." *Robles v. Cox & Co.*, 841 F. Supp. 2d 615, 632 (E.D.N.Y. 2012).

Although "conduct may be 'extreme and outrageous' where 'there is a deliberate and malicious campaign of harassment or intimidation,'" this is still an "extremely high bar." *McCollum v. Baldwin*, 688 F. Supp. 3d 117, 133 (S.D.N.Y. 2023) (quoting *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122-23 (2d Cir. 2019)). In particular, "statements… made by third parties … cannot be used as evidence of plaintiffs' claims of [IIED]…" *Id.* Here, Plaintiff relies in part on the content of the "exclusive websites" that she does not allege were written by any Defendant. SAC ¶ 148. Moreover, even "[k]nowing and purposeful copyright infringement … does not rise to the level of 'extreme and outrageous' that New York courts contemplate to sustain an intentional […] infliction of emotional distress claim." *Jones v. Atl. Records*, 2023 U.S. Dist.

---

defendant created a "risk of *physical* injury." *Cf.* SAC ¶ 48 (alleging violence by *nonparty* Ellis/Rees). Rather, she alleges "emotional and psychological abuse." SAC ¶ 143. Moreover, as already discussed with respect to the New York State Human Rights Law claim, *see supra* p. 18, Plaintiff offers no concrete facts suggesting that any Defendant's conduct was gender-motivated.

22

LEXIS 152283, *21 (S.D.N.Y. Aug. 29, 2023) (last alteration in original).  Indeed, "[i]t is nearly impossible in New York for a plaintiff to state a viable claim for intentional infliction of emotional distress."  *Id.* at *22.

Plaintiff's "formulaic recitation of the elements of [the] cause of action"—that "Defendants [sic] conduct was so extreme in degree and outrageous in character that it goes beyond all possible bounds of decency"—"will not do."  *See Twombly*, 550 U.S. at 555.  Setting aside the inadequate allegations of copyright infringement, *see Jones*, 2023 U.S. Dist. LEXIS 152283, *21, and the misplaced allegations about a third-party website, *see McCollum*, 688 F. Supp. 3d at 133, Plaintiff alleges only that *a* defendant said that she was a thief, dangerous, and a con.  That does not come close to meeting the "rigorous" requirements of the tort of IIED.  *See Chanko*, 27 N.Y.3d at 57.

### 7. *Plaintiff lacks a private right of action under criminal statutes*

Plaintiff's Twelfth, Thirteenth, and Fourteenth Causes of Action allege violations of 18 U.S.C. § 2261A, N.Y. Penal Law § 240.26, and 18 U.S.C. § 1651, respectively.  As a general rule, there is "no private right of action to enforce either state or federal criminal statutes."  *Israel v. City of Syracuse*, 2021 U.S. Dist. LEXIS 198036, *18 (N.D.N.Y. Sep. 16, 2021).  That general rule applies here.  *Cain v. Christine Valmy Int'l Sch. of Esthetics*, 216 F. Supp. 3d 328, 335 (S.D.N.Y. 2016) ("no private right of action is available under § 2261A"); *Israel*, 2021 U.S. Dist. LEXIS 198036 at *17-*18 (dismissing putative claim under Penal Law § 240.26); *Wagner v. Stout St. Fund I L.P.*, 2013 U.S. Dist. LEXIS 124682, *10 (E.D.N.Y. Aug. 30, 2013) ("§ 1651, … relating to piracy … neither provide[s] a private cause of action nor appear[s] to have any relevance to Plaintiff's claims").

**8.** *__Plaintiff does not state a defamation claim__*

Plaintiff's Fifteenth through Twenty-First Causes of Action allege "Libel and Slander," *i.e.*, defamation. *See Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001) (explaining that libel and slander are "twin torts" differing only in the method of publication: "spoken defamatory words are slander; written defamatory words are libel"). "To prove a claim for defamation, a plaintiff must show: (1) a false statement that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm, unless the statement is one of the types of publications actionable regardless of harm." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 245 (2d Cir. 2017). Here, Plaintiff fails to clearly identify who published the statements and to whom—although, as with the tortious interference claims, it can reasonably be inferred that Mr. Skipper allegedly made the statements to Big Media, and that other defendants were not involved. Further, Plaintiff fails to adequately plead that the statements were false.

> **a.** *__Plaintiff does not adequately identify the speaker or listener__*

"Although New York's strict pleading requirements to state a cause of action for libel or slander under Civil Practice Law and Rules § 3016(a) do not apply in this diversity action, 'federal courts do require that the alleged defamatory statements be pleaded with sufficient specificity to put the defendants on notice.'" *Bloom v. Fox News*, 528 F. Supp. 2d 69, 73-74 (E.D.N.Y. 2007). In particular, this Court has recently explained that "to allege a claim of defamation with 'sufficient particularity'", a plaintiff's allegations must "identify the speaker, the allegedly defamatory words, [and] when and to whom the statements were made." *Lewis v. R.L. Vallee, Inc.*, 2024 U.S. Dist. LEXIS 73349, *12 (N.D.N.Y. Apr. 23, 2024).

Here, Plaintiff alleges that "[i]ncluding, but not limited to, on 25th January 2024, Defendants made [seven] defamatory and disparaging statements oral and/or written about Plaintiff, is in fact false." SAC ¶¶ 168, 171, 174, 177, 180, 183, 186. But there are seven remaining

defendants in this action, and the only defendant who is clearly identified as allegedly making a false statement to anyone is Mr. Skipper. SAC ¶ 55. Therefore, because Plaintiff does not "identify the speaker … [or] to whom the statements were made," Maloy Defendants are not fairly "on notice" of the statements they must defend themselves against. *See Lewis*, 2024 U.S. Dist. LEXIS 73349, *12; *Bloom*, 528 F. Supp. 2d at 74.

### b. *Plaintiff does not adequately plead falsity*

Even if the SAC could fairly be read as accusing Mr. Maloy of making specific statements to a specific person, the SAC would still fail to "identify *how* the defendant's statement was false [as it must] to survive a motion to dismiss." *Tannerite*, 864 F.3d at 245. Plaintiff simply identifies seven allegedly defamatory statements and asserts that each one "is in fact false." *See* SAC ¶¶ 168, 171, 174, 177, 180, 183, 186. That conclusory statement is not enough. Rather, the "plaintiff must plead *facts demonstrating falsity* to prevail…." *Tannerite*, 864 F.3d at 247 (emphasis added). Plaintiff has not even attempted to do so.

Nor has Plaintiff pleaded sufficient culpability on any defendant's part. She alleges that each statement was made "negligent[ly]." SAC ¶¶ 168, 171, 174, 177, 180, 183, 186. But assuming without conceding that Plaintiff is a private figure, "where the content . . . is arguably within the sphere of legitimate public concern," the plaintiff must plead that "the publisher acted in a *grossly irresponsible* manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 287 (S.D.N.Y. 2016) (emphasis added) (citing *Chapadeau v. Utica Observer-Dispatch*, 38 N.Y.2d 196, 199 (1975)). Mere negligence suffices only if the speech is *not* "arguably within the sphere of legitimate public concern." *Id.*; *see also Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749 (1985). Allegations of "criminal activity in the community [are] within the sphere of legitimate public concern." *Hayt v. Newsday*,

LLC, 176 A.D.3d 787, 787 (2d Dep't 2019). Therefore, to the extent the allegedly defamatory statements concern Plaintiff's allegedly criminal conduct, she must plead—and has not pleaded— that whichever Defendant was the speaker acted not just negligently, but "grossly irresponsibl[y]." *Chapadeau*, 38 N.Y.2d at 199. The defamation claims must be dismissed.

## CONCLUSION

For the foregoing reasons, the Second Amended Complaint should be dismissed in its entirety, with prejudice.

Respectfully submitted,

Dated: July 11, 2024

**BURDICK LAW PLLC**

Benjamin Burdick, Esq.
NDNY Bar No. 703162
217 S. Salina St., 6th Floor
Syracuse, NY 13202
(315) 727-1540
ben@burdick.law
*Counsel for Maloy Defendants*