U.S. DISTRICT COURT – N.D. OF N.Y.

# FILED

## Sep 04 - 2024

*John M. Domurad, Clerk*

## UNITED STATES DISTRICT COURT

### Northern District of New York

### 6th Judicial Division

———————————————————  )
APRIL CHANDLER.                              )        Case No.3:24 CV-206
                                             )
              Plaintiff                      )
                                             )
        -against-                            )
                                             )        **RESPONSE TO MOTION**
                                             )
                                             )
                                             )
                                             )
MARK SKIPPER AKA SKIP ARCHIMEDES,            )
MICHAEL MALOY, THOMAS HARRISION,             )
DAVID GUC ET AL.                             )
                                             )
              Defendants                     )
———————————————————  )

**RESPONSE TO DEFENDANT'S EMPIRICAL MEDIA
AND MIKE MALOY'S MOTION TO DISMISS.**

1.      In cases based on diversity of citizenship the lawsuit may be filed in the jurisdiction

where the Plaintiff or the Defendant resides. 28 U.S.C. § 1332. Venue in this District is

appropriate pursuant to 28 U.S.C. § 1391, as the Northern District of New York is the Judicial

District in which a substantial part of the events forming the basis of the Complaint occurred,

where a substantial part of the evidence involved in the subject action is situated, and where the

majority of the witnesses to the events forming the basis of the Complaint reside. Furthermore,

Defendants meet the requisite minimum contacts for jurisdiction in this District. Not all

1

Defendants reside in California, with Mark Skipper aka Skip Archimedes residing in Norfolk, United Kingdom. Given the diversity of Defendants and the Plaintiff domiciled in the Northern District of New York State since November 2022, and a signed written instrument under New York jurisdiction between Plaintiff and Defendants, this Court and Judicial officers have proper jurisdiction and the right to act over Plaintiff's case against Defendant's.

2.      Plaintiff may be pro se with limited knowledge of legal language and case law, however, the facts remain undisputed that Defendant's Michael Maloy and Empirical Media were a "work made for hire" contractor on Plaintiff's film Quest For Youth receiving monetary compensation for their services with an agreement clearly stating "work made for hire" under the authority of New York State.  Defendant's do not have a contract stating Plaintiff would relinquish her rights to her Copyright or share Copyright with Defendants.

3.      As per Defendant's filing with the Copyright Office, **Exhibit 1,** Defendant is claiming Copyright ownership knowing he was hired for his editorial skills as a "work made for hire" editor to bring Plaintiff's vision to life as the film's Director and Producer after Defendant Michael Maloy was introduced to Plaintiff by Thomas Harrison, VP of Vanguard Management in January 2023. Defendant Michael Maloy is represented by David Guc, Thomas Harrison and others at Vanguard Management from their New York and Los Angeles offices. Defendant once a self proclaimed professional in the Film Industry has not filed any works, originality, fixation or creativity with the United States Copyright Office since the 1980's, over 40 years ago showing Defendant is out of touch with today's Film Industry, struggling to create relevant shows that are current and sellable and he was only able to create the edit of Quest For Youth the way he did based on the direction and vision of Plaintiff and the quality of her raw interviews with experts.

4.      Defendant's Michael Maloy and Mark Skipper aka Skip Archimedes reached out to Plaintiff's Sales Agent Big Media, stating they would move forward with the project at a higher level without Plaintiff along with falsehoods about Plaintiff, **Exhibit 2.** Defendant Michael

Maloy provided details of Plaintiff's sales agent to Mark Skipper aka Skip Archimedes after he was told this private information by Defendant Thomas Harrison who assured Plaintiff he would not disclose Plaintiff's Sales Agent to anyone, then did. Defendant Michael Maloy was the first to reach out to Big Media on Wednesday 17th January, 20224 at 1.00pm *"This is in regards to the film 'Quest For Youth' that you are currently marketing for international sales: https:// www.bigmedia.tv/the-quest-for-youth I am writing to inform you that April Chandler does not hold rights to this film and was not authorized to submit to you. I in fact am the author of the film and hold substantial rights. You may contact me for further details."* Defendant Michael Maloy was aware he was tortiously interfering with Plaintiff's contract and business relationships, and clearly knew the film was being marketed internationally given the information shared in his communication with Big Media. Defendant Michael Maloy has never specified "his substantial rights" nor did he reach out to Plaintiff with any grievances or disputes. Three days prior to his communication with Big Media he filed Copyright for Plaintiffs creativity, fixation and originality, and emails from Defendant Thomas Harrison state *"I've been trying to resolve this."* but then didn't, **Exhibit 3.** Defendant's Michael Maloy, Empirical Media and Mark Skipper aka Skip Archimedes added Plaintiff's footage to YouTube as their own film trailer in order to trick people into investing money into "their" project misleading tens of thousands of people that they are the creators, producers and director of the film. YouTube only gave Plaintiff 10 days to file action against Defendants in Federal Court or they would reinstate Plaintiff's copyright, creativity, fixation and originality on Mark Skipper aka Skip Archimedes YouTube platform and why Plaintiff had no choice, but to act quickly and file action in Federal Court with limited knowledge of the Court system in order to prevent her film and Talent in the film from being exploited further, which would add additional emotional distress, financial loss, embarrassment to Plaintiff, and Talent Plaintiff interviewed for the film spanning years would also be damaged as they did not agree for their interview footage to be used in a production Plaintiff had been

removed from or used in a different production as per legal agreements signed between Plaintiff and Talent, creating legal troubles for Plaintiff if their interview footage stayed on YouTube and other platforms, damaging Plaintiff's reputation with Talent who she has close relationships with and why they signed releases only for Plaintiff to use their interviews **Exhibit 4.** No-one else has video releases from Talent to use their interviews, including Defendant Michael Maloy and why he can't use the footage or register this footage as his Copyright with zero rights to any of the raw footage or the first cut of the film. Only Plaintiff holds the rights and is concerned about losing the trust and respect of Talent, which is imperative to her role as producer and director, something she still takes very seriously even after Plaintiff and Talent were violated by third parties Defendant Michael Maloy and Empirical Media hired by Plaintiff to do a simple job of editing Plaintiff's raw footage. Instead, he along with the other Defendants conspired to steal Plaintiff's film, profit off her hard work and that of all the Talent interviewed for the Film and destroy Plaintiff and her business in the process.

5.      In Defendant's Motion to Dismiss, Defendant has either missed SAC 1, SAC 12 and the many other references stated clearly throughout the SAC noting Plaintiff's role within the production from conception to present day, or Defendant has deliberately misrepresented to the Court in order to minimize Plaintiff's involvement in an attempt to create doubt of her role in the making of the film, seemingly to justify Defendant's poor actions towards Plaintiff and undermine the value of her claims against Defendant, even going as far as stating on page 4: *"she does not explain how the footage came to be "hers"; she nowhere alleges that she personally shot, directed or otherwise created the footage in question in the first place*." Yet in SAC 1, pg. 1, SAC 12, pg. 4, Plaintiff clearly writes that she conducted the interviews *"…the film is almost 2 hours long and contains at a minimum 90% of Plaintiff's raw footage, including A Roll interviews with experts herself and/or Frazer Bailey conducted from around the world spanning years…"* and *"…completed Film and Plaintiff's Raw Footage "filmed" by Plaintiff…"*

For clarity, in response to Defendants Motion, Plaintiff has been in the Entertainment Industry working as an independent producer as her full time job for over 20 years, not as a hobby or a second job, but as her livelihood and how she pays her bills, mortgage, buys food and clothes for her three children. In the Film Quest For Youth, Plaintiff is the Director, Producer and Narrator, but like all independent documentary films, she has taken on other roles as needed, for example, camera operator, sound engineer, and within her role as Producer she's been the therapist and confidant for crew members and Talent going through hard times, which includes Defendant Michael Maloy when he expressed to Plaintiff in hours of phone calls and texts that he was struggling with depression after an unexpected bad break up believing them [ex-partner] to be a narcissist. Over the last 8 + years she has produced all A Roll and B Roll footage, other than roughly 10% of stock footage used as a filler in the latest first cut. Plaintiff along with Frazer Bailey agreed the direction at conception and Plaintiff reached out to Talent to be involved and after booking them on the film, she shot the interviews and B Roll footage in line with questions put together by both Plaintiff and Frazer Bailey and their agreed vision many years before Plaintiff met Defendants Michael Maloy and worked with him and his company Empirical Media. Plaintiff has interviewed experts in the film in multiple Countries without her producing partner Frazer Bailey present. Frazer Bailey has interviewed some experts with Plaintiff either present in person, remotely via zoom, or on occasion, the direction and interview questions had been prepped and agreed between Plaintiff and crew ahead of an interview that Plaintiff didn't attend in order to keep the production costs within a sensible budget as traveling became expensive given Plaintiff travels to location for all shoots with her three minor children as their sole provider and guardian. Plaintiff is financially liable for every aspect of the film Quest For Youth, managing day to day operations, including payroll for Frazer, crew and Defendant Michael Maloy ensuring they receive monetary compensation for their roles in line with their contracts paid directly by Plaintiff, along with Plaintiff buying all film equipment, paying for

travel costs, hotels, line producer fees for creating and revising budgets, designers for pitch deck and film posters, various versions of trailers over the years for different Countries, music, graphics, and other production costs. Inception to completion is Plaintiff's job as the producer ensuring the project runs smoothly and when it doesn't, resolve conflicts, scheduling issues, flight delays,… multiple daily tasks ongoing for years. Plaintiff has not received a cent for her role as Producer, Director or Narrator on this film from anyone, including Defendants Michael Maloy or Empirical Media. It's been a substantial investment by Plaintiff, which would have paid off if Defendant's Michael Maloy and Empirical Media had not interfered with her business relationships, including with Big Media. Plaintiff has not only been a part of the creative process resulting in thousands of hours of her time working in the project over many years as is typical for a documentary project interviewing experts around the world, but she has ongoing direct out of pocket expenses to this day, including covering the cost of this lawsuit to protect Plaintiff's film and all the talent involved and ensure the film is still completed and distributed on conclusion of this lawsuit. Plaintiff is the point producer running the business with budget meetings, calls and meetings with Talent and their management, negotiating their contracts with their legal teams, agreeing their expenses and/or fees for their participation, entertaining costs, i.e. paying for dinner with crew or Talent, including with Defendant's Michael Maloy and Thomas Harrison at a cost of over $600 for a meal in Los Angeles at a restaurant of their choosing after Plaintiff and Defendant started working together, and birthday gifts to all crew and Talent working with Plaintiff, including Defendant Michael Maloy. Responding daily to Talent and/or their management with emails, texts for any issues, questions, including working directly with their Lawyers, Publicists, in-house Marketing Teams, creating the strategy, podcasts and other materials to market the film, maintaining relationships with Talent and their teams for more than a decade and building relationships with Networks, Sales Agents to find a home for Quest For Youth, which Plaintiff did with Big Media before the fully executed contract and

relationship was directly sabotaged by Defendants Michael Maloy and Empirical Media. Plaintiff runs a tight ship rooted in trust and respect and is all consuming. Yet, Defendant Michael Maloy is attempting to undermine Plaintiffs involvement in this film spanning years when he worked on raw footage Plaintiff sent to him on 4 drives, which he still hasn't had the decency to return to Plaintiff at a cost of $250 per drive with valuable raw footage, for one month's work editing Plaintiff's raw footage. Plaintiff assumed the role of lead producer and has been running the show for many years without input from Frazer Bailey due to a medical emergency he unfortunately experienced, although he is entitled to his back end fee on distribution of the film as per Plaintiff and Frazer Bailey's production agreement and the quit claim agreement signed by him on 9th January, 2024 forming a part of the Chain of Title after sales agreement was signed in December 2023 between Plaintiff and Big Media, as noted clearly in Plaintiff's SAC. The details of the Sales Agreement are private and confidential, which can be discussed in further detail during Discovery. The non-fiction space is thriving, especially shows related to improving health and reducing stress post Covid. Each production has a value attached based on Talent involved and an expected ROI and with the Talent handpicked by Plaintiff and Frazer Bailey to be interviewed as experts, there are some big stars in Quest For Youth and marketing analysis for the Countries distributing the film predicts $2.5m-$5m as a ROI over three years. Defendants tortious actions do not just impact Plaintiff, but other Producers and Talent involved in the film... obligations Plaintiff is responsible to deliver on.

6.      Defendant does not own the Chain of Title for Plaintiff's Film either and has acted inappropriately with malicious intent to fraud and acquire materials that Plaintiff holds Copyright, damaging her reputation, business, her relationships and film in the process.

7.      Plaintiff did not file prematurely under Fourth Estate, Copyright was already filed and registered by Defendant Michael Maloy, a situation that was not addressed under Fourth Estate v. Wall Street .Com "registration . . . has [not] been made" under §411(a) until the Copyright Office

registers a copyright, which they did on January 14th, 2024 by Defendant Michael Maloy one month prior to Plaintiff commencing legal action against Defendants. The USCO acted on Plaintiff's expedited application immediately on the 8th February, 2024 by opening an investigation into the fraudulent application and subsequent registration received by Defendant Michael Maloy impacting Plaintiff's registration of the same works. *Title 17 U.S.C. §411(a) states that "no civil action for infringement of the copyright in any United States work shall be instituted until . . . registration of the copyright claim has been made in accordance with this title."* There is an exception to this rule if the Copyright Office refuses to register. There is no precedent ruling for when a Defendant registers a Copyright fraudulently for Plaintiff's works and therefore should be decided on the merits of this case and not solely on the decision of the Fourth Estate ruling when circumstances are very different and Copyright was in fact already registered, thereby meeting the registration criteria. Defendant's Copyright registration is disputed by Plaintiff. In limited circumstances, copyright owners may file an infringement suit before undertaking registration. For example, a copyright owner who is preparing to distribute a work of a type e.g., a movie or musical composition can be afforded a statutory exception and can be ruled on by this Court. "The Copyright Act safeguards copyright owners by vesting them with exclusive rights upon creation of their works and prohibiting infringement from that point forward."

8.      If this case is dismissed based on the Fourth Estate ruling, it would be an injustice and Plaintiff respectfully requests the right to refile her lawsuit against Defendants given she has met the burden of proof as the rightful Copyright owner, and her film and raw footage is not owned by an Editor who worked on her project for approximately one month under a Work Made For Hire Agreement and received monetary compensation.

9.      Defendant has not filed a counterclaim against Plaintiff for "his" copyright filed with the USCO on the 14th January, 2024 because he knows he will not win as he does not own the film

or any of the raw footage used within the film and has zero evidence to back up his copyright claim, which would not have been accepted had he not lied and committed fraud on his USCO application. Defendant Michael Maloy stated to Big Media in writing that he has substantial rights, **Exhibit 2,** yet he hasn't specified what those rights are or provided any legal documentation to show his "substantial rights" other than him filing a fraudulent application to the USCO.

10.    Defendant's Michael Maloy and Empirical Media admitted to this Court that Plaintiff owns the raw footage and sent him the footage from New York to his home in Venice Beach, California in order for him to edit the footage. He further admits that Plaintiff sent him the original cut called Fountain of Youth to review and use as a template. He further admits that Defendant was not involved in any aspect of the filming of the interviews, either A Roll or B Roll footage, that he was introduced to the project by Defendant Thomas Harrison during post production in 2023.

11.    Plaintiff filed her lawsuit against Defendants demonstrating "a properly pleaded copyright infringement claim… that copyrights have been registered in accordance with the statue…" After a two month investigation by the USCO examiner, Plaintiff prevailed and received Copyright for her creativity, fixation and originality, however, the USCO do not settle disputes, Federal court is the only recourse for Plaintiff to remove Defendant Michael Maloy's fraudulent Copyright filing from the USCO registry for Plaintiff's film Quest For Youth. Plaintiff would have received a Copyright certificate prior to filing a Lawsuit if Defendants hadn't filed a fraudulent Copyright for her work, fixation, creativity and originality, SAC 2, **Exhibit 1**, and then attempted to steal Plaintiff's film and work with her sales agent Big Media as per documentation, SAC 3, **Exhibit 2**. Plaintiff should not be penalized for the bad acts of Defendant, which would encourage others to register fraudulent Copyright applications for other's work, which not only delays registration for the true Copyright owner with resources

wasted at the USCO tasked to investigate, but potentially avoids accountability and being held liable in Federal Court, which Defendant is trying to do with his motion to dismiss.

12.     Plaintiff accepts her legal failings and has corrected errors in her Second Amended Complaint and in her responses to motions, including providing a detailed descriptive statement demonstrating why relief is demanded, and how events led to Plaintiff filing a lawsuit against Defendants, who the Defendant's are and who they portray themselves to be, which is significant to Plaintiff's case adding context on what transpired leading up to Defendant's taking the unlawful actions they did against Plaintiff, including the history of Mark Skipper aka Skip Archimedes showing he is not authentic, but a proven liar spanning decades, disgruntled after Plaintiff walked away from his true story project he wanted to make about his life after Plaintiff discovered his story was fake, with him aligning with Defendant's Michael Maloy and Empirical Media to work together on Plaintiff's film without her: *"I have also been in close contact with Michael Maloy who created the edit for Quest For Youth and we believe that we can finish this project at a higher level which will have more impact"…, "My apologies this isn't a positive message but Michael and myself believe it can end very positively for us all"*, **Exhibit 2.**

13.     Plaintiff believes Defendant's were opportunistic in order to gain full rights over Plaintiff's film for financial gain "kicking her while she was down" instead of supporting Plaintiff through an abusive ordeal with their friend Greg Ellis aka Jonathan Rees when she received a 3 year full stay away OOP for her and her children ordered by Honorable Judge Young in Broome Family Court after a trial. Nor were they congratulatory on the signing of the sales agreement in December 2023 for International Distribution Plaintiff worked night and day on for months to secure for her film Quest For Youth. Instead, her agreement with Big Media was directly sabotaged by Defendant's Michael Maloy and Mark Skipper aka Skip Archimedes sending falsehoods to Big Media, with the other Defendant's Vanguard, David Guc, Thomas Harrison standing by and allowing the theft of Plaintiff's project and injustice to happen at their

request to stand down and allow them to deal with Defendant's Empirical Media and Michael Maloy on Plaintiff's behalf given they represented him too. **Exhibit 6.**

14.    If the Court believes Plaintiff has failed to state a claim upon which relief can be granted in a format accepted by the Court, Plaintiff respectfully requests for leave to refile her action in a format that pleases the Court against Defendants given Plaintiff owns the Copyright and Chain of Title for her work. If the Court is satisfied that Plaintiff has demonstrated a valid complaint against Defendant's, be it presented to the Court without legal training, Plaintiff respectfully requests the Court denies Defendant's motion to dismiss.

15.    When it comes to independent contractors (either an individual or an entity), the Copyright Act is very specific about which works qualify as a work for hire. Circular 30 specifically states, "Part of a motion picture or other audiovisual work" will qualify as "works made for hire" when created by a contractor subject to a written agreement, **Exhibit 7**.

16.    A Film Director is a creative professional who oversees the artistic aspects of a film production. They are responsible for guiding and managing the actors and film crew, interpreting scripts, and ensuring the visual storytelling aligns with the desired narrative style. Directors are the creative leads of the film. They hold the creative vision throughout the whole process **Exhibit 8**, from pre-production through to the final edit. They are employed by the executive producer or producer, who is ultimately in charge of the production. Plaintiff spent months explaining her vision to Defendant's and shared her previous cut Fountain of Youth with Defendant's as a blueprint for Defendant's to follow and understand what Plaintiff was looking to achieve in regards to her material. Quest For Youth content is as relevant today as it was in 2018 due to the interviews conducted with experts who are global sensations. What makes this film sellable and unique, is the interviews conducted by Plaintiff and Producer Frazer Bailey. Plaintiff could hire another Editor to complete the film using Plaintiff's vision and raw footage, but without

Plaintiff's raw footage, creativity, fixation and originality, Defendant's Michael Maloy and Empirical Media would have zero material to edit or file Copyright for.

17.     A film editor is responsible for overseeing the assembly of the film from beginning to end and works closely with the director and producers to produce a final version of the film that represents the vision of the Director. Even though Plaintiff and Defendant's Michael Maloy and Empirical Media had multiple conversations about the vision for her film spanning many months, along with him receiving her previous film cut for Defendant's to watch as a template for structure, with extensive, comprehensive direction from Plaintiff, it only took Defendant's one month to complete the First Cut on receipt of Plaintiff's drives with her originality, creativity, fixation for the Quest For Youth film utilizing Plaintiff's raw footage, A Roll and B Roll, with found stock footage to fill gaps as fillers, which Defendant did not create either. An editor working on James Cameron's films, for example, Avatar, doesn't become the Copyright owner as the Editor, nor is the Film the Editors vision, but is that of the Director James Cameron, which the Editors follow through to Final Cut.

18.     Plaintiff is also the Narrator for her film Quest For Youth. She has not received a cent from Defendant's Michael Maloy and Empirical Media for her role as producer, director or as the narrator, which adds significant weight to the overall production value of this film. Plaintiff has paid Defendant monetary compensation as a "work made for hire" in their role as Editor, **Exhibit 9**. Plaintiff would have paid Defendant a final lump sum, minus milestone payments Defendant had already received, on sign off of Final Cut as per Agreement, but not as much as he would have received from stealing Plaintiff's film and passing it off as his own with Defendant Mark Skipper aka Skip Archimedes, further backed up by text messages on August 27th 2023 at 14:23 when Defendant wrote "*Now that I know the material and understand what's available, I can say with confidence that we can come in at a total budget of $50k*."[we] referring to Michael Maloy

and Empirical Media. **Exhibit 10** (text messages show a change in agreement with budget not to exceed $50,000 instead of $75,000 as noted in original agreement).

19.    Defendant Michael Maloy registered Copyright with the USCO on 01/14/2024, merely 3 days after he received confirmation from Producer Frazer Bailey via email that Plaintiff owns the Film, **Exhibit 11**. If Defendant Michael Maloy believed he owned the Copyright for Quest For Youth, disgruntled since October 2023, Plaintiff fails to understand why Defendant didn't apply for Copyright on the completion of First Cut in October 2023, or in November, or in December when the sales agreement was signed and Frazer Bailey and Plaintiff were still joint Copyright and Chain of Title owners, instead he waited more than 3 months until 3 days after Producer Frazer Bailey had signed the Quitclaim agreement signing over all rights to Plaintiff ready for distribution, confirmed to Defendant Michael Maloy by Defendant Thomas Harrison that Plaintiff solely owned the Copyright and a clean Chain of Title on the 12th and 13th January, 2024 after Defendant Thomas Harrison received the paperwork directly from Plaintiff and why Plaintiff believes she was targeted based on her Gender. Frazer Bailey also confirmed to Defendant Michael Maloy in emails sent prior to him registering Copyright that Frazer Bailey had never met Mark Skipper aka Skip Archimedes who claimed he owned the film in his email to Big Media **Exhibit 2** and YouTube **Exhibit 14.** Plaintiff believes Defendant Michael Maloy would not have filed for Copyright if Defendant's Vanguard, Thomas Harrison and David Guc hadn't breached privacy and confidentially and told Defendant Michael Maloy the agreement between Plaintiff and Producer Frazer Bailey had been fully executed on 10th January, 2024, and if Producer Frazer Bailey had not confirmed to Defendant Michael Maloy that Plaintiff solely owned the film after Frazer Bailey had signed over Chain of Title, his rights to Plaintiff for Distribution on January 9th, 2024, **Exhibit 12**.

20.    Plaintiff believes she was targeted by Defendants as easy prey and discriminated against based on her Gender taken advantage of due to her being in a vulnerable situation subjected to

violence and abuse by Defendant's friend and co-worker Greg Ellis aka Jonathan Rees with Defendants knowing she was going through Family Court at the time as the Petitioner to receive an OOP against their friend to protect her and her children. The New York State Human Rights Law (NYSHRL) protects contractors working together in any type of work relationship, including those in Client/Management relationships, Producer/Editor relationships, Director/ Editor relationships. The NYSHRL applies to many non-employees, including: Contractors, Subcontractors, Vendors, Consultants, Temporary workers, and "Gig" workers providing services pursuant to a contract. The NYSHRL protects individuals at any location where they work, including remotely. The NYSHRL protects many individuals whose status is not that of a traditional employee, including interns, independent contractors, consultants and people who provide services under a contractual relationship. Plaintiff therefore does have the right to pursue claims of workplace discrimination, harassment, and retaliation under the NYSHRL. Plaintiff's claim is not untimely and as per the statute "created a one year revival period", which would in fact end in October 2024, 8 months after she filed legal action against Defendants in Federal Court. Discrimination, harassment and a hostile work environment ramped up in late August 2023, worsened in September 2023 and became toxic and unbearable from October 2023, not in November 2022 as Defendant states. Plaintiff was introduced to Defendant Michael Maloy by Defendant Thomas Harrison in January 2023.

21.    In email correspondence as noted in **Exhibit 11**, Defendant Michael Maloy didn't disclose to Producer Frazer Bailey that he was already working with Plaintiff with a signed agreement in place and the First Cut already completed, instead he lied to Frazer Bailey with falsehoods in order to fish for information about Plaintiff and the status of ownership in the film.

22.    Plaintiff only found out Defendant Michael Maloy had registered a Copyright for her film Quest For Youth when she registered her work with the USCO on the 8th February, 2024, accepted into the USCO system on the 12th February, 2024, **1-13494149971**, prior to filing legal

action in Federal Court against Defendant Michael Maloy and the other Defendants. Michael Maloy's fraudulent actions not only delayed Plaintiff receiving a timely Copyright registration for two months for her work after an in-depth investigation, finally entered on 16th April, 2024, but forced Plaintiff into a Lawsuit in record time to prevent Defendant's from taking her film to another Sales Agent for Distribution based on their communication to Big Media from Defendant's on the 17th January, 2024 at 1pm from Michael Maloy, and on the 25th January, 2024 at 4.46 am from Mark Skipper aka Skip Archimedes who wrote to Big Media *"I have also been in close contact with Michael Maloy who created the edit for Quest For Youth and we believe that we can finish this project at a higher level which will have more impact"… "If you would like to discuss things further than please let me know by emailing me back or contacting me direct on +44777…."…"If you would like to read more information on April Chandler then please check this website out because she has conned so many people and I wouldn't wish for this to happen with your company"… "My apologies this isn't a positive message but Michael and myself believe it can end very positively for us all."…,* **Exhibit 2**. Defendant's tortious acts and Copyright Infringement did not end positively for Plaintiff. Defendant's communication clearly shows Defendant's intent to steal Plaintiff's film, including benefiting from her relationship with Big Media who they were clearly asking to distribute Plaintiff's film with them instead, taking Plaintiff's creativity, originality and fixation as their own.

23.    Defendant's Michael Maloy and Empirical Media didn't contact Plaintiff with any disputes, nor did they give her an opportunity to resolve any conflicts, Defendant's simply went dark and proceeded to move forward to benefit financially from Plaintiff's film without her along with other Defendant's as documented above. As Defendant Michael Maloy's management team, Vanguard, David Guc and Thomas Harrison receive 10% commission from Michael Maloy's earnings as standard practice in the Entertainment Industry. Plaintiff will ask for disclosures in discovery related to earnings each Defendant has received for Plaintiff's creativity, originality

and fixation, and all parties contacted in order to raise investment and/or sell Plaintiff's film using the fraudulent Copyright submitted to the USCO by Defendant Michael Maloy. Plaintiff acting quickly by filing in Federal Court may have prevented Defendant's from selling her film to Netflix et al. Plaintiff will know more after the discovery phase of this Lawsuit. Plaintiff did see her film content on Defendant Mark Skipper aka Skip Archimedes YouTube channel https://www.youtube.com/c/SkipArchimedes who sent the link with her footage: https://www.youtube.com/watch?v=UE-oxT_AzJg to Big Media on the 25th January, 2024 caught out using Plaintiff's material to raise money to finish [his] film with Defendant's Michael Maloy and Empirical Media. Plaintiff suspects that Defendant's didn't expect Big Media to forward their emails to Plaintiff in order for them to establish what was going on. Plaintiff immediately filed a dispute with YouTube on the 25th January, 2024 which in turn was countered by Defendant Mark Skipper aka Skip Archimedes **Exhibit 14,** agreeing to jurisdiction in Federal Court and accepting service from Plaintiff, and why YouTube gave Plaintiff 10 business days to respond, approximately to the 12th February, 2024 asking Plaintiff to confirm legal action had been taken in Federal Court against Defendant **Exhibit 14** in order for YouTube to take down the infringed video pending the outcome of this Federal Court Action against Defendant's.

24.     As the Editor, Defendant is required to receive feedback on his assembly and make changes as per Director's vision, which is standard in the Film Industry, but is also specified in the agreement. After First Cut was completed and Plaintiff had completed Narration, Plaintiff didn't hear from Defendant's for more than 4 months who refused to communicate with Plaintiff. She only received communication from Thomas Harrison stating not to contact Michael Maloy directly, he would resolve along with a Letter from Defendant Michael Maloy, **Exhibit 15**.

25.     After Defendant's Michael Maloy and Mark Skipper aka Skip Archimedes contacted Big Media with the website and other falsehoods, Big Media put a hold on Distribution and pulled Plaintiff's Film, Quest For Youth, **Exhibit 6**. Plaintiff has suffered financial loss, emotional

distress due to Defendant's unlawful tortious actions and why she is demanding compensatory and punitive damages, fees, costs, interest and injunctive relief, which is not unreasonable given Defendant's treatment of Plaintiff and Defendant's infringing on her Copyright ownership.

26.     Plaintiff has complied with the Federal Rules of Civil Procedure and the Court's Local Rules. Given the fraudulent misrepresentations of Defendants to Big Media with Defendant's attempting to steal her work and Distribute her creativity, originality and fixation and the 10 day deadline set by YouTube, Plaintiff had no choice, but to file her Lawsuit against Defendant's.

27.     Plaintiff acknowledged in her SAC that Mark Skipper aka Skip Archimedes wasn't known to the other Defendants as a non-industry person, but a "wannabe" until in and around October, 2023 when he was connected to Defendant's Michael Maloy, Thomas Harrison and David Guc by Greg Ellis aka Jonathan Rees with his character and background significant to the context and history leading to Plaintiff filing action against Defendant's.

28.     Defendant Michael Maloy signed the Agreement on behalf of himself and Empirical Media as the sole officer of his company, as per documentation, with only himself registered as an owner and employee. Plaintiff is not aware of any contractors who worked with Empirical Media and Michael Maloy on Plaintiff's Film Quest For Youth, but will become clear during discovery. Defendant Empirical Media is therefore accountable along with Michael Maloy for his unlawful tortious actions against Plaintiff and Copyright Infringement.

29.     Plaintiff has also responded to Vanguard Management's, David Guc and Thomas Harrison's motion to dismiss. She has asked the Court for Default Judgment against Mark Skipper aka Skip Archimedes who has failed to plead.

30.     On Plaintiff's Copyright registration, Copyright Claimant address is clearly 200 Washington Avenue, 7181, Endicott, NY13760, **Exhibit 13**. Rights and Permissions go to a mail box in Manhattan Beach as Mephobia team members who reside in Los Angeles deal with Marketing, Publicity, Rights and Permissions for Plaintiff's content, not just for this one

production, but for Plaintiff's multiple shows, and six published books. Plaintiff is resident in New York, with her three minor children attending school in Upstate New York. Plaintiff can provide a multitude of evidence confirming residency in the Northern District if the Court requires.

31.    Under Rule 8 of the Federal Rules of Civil Procedure, Plaintiff has submitted a complaint with a short plain statement showing Plaintiff is entitled to relief. This case may be complex due to multiple Defendant's and the nature of circumstances leading up to the Copyright Infringement and other unlawful acts, however, Plaintiff has provided timely responses to motions and exhibits to support her initial statement that Plaintiff is entitled to relief.

32.    Defendant's made poor decisions to believe their friend and co-worker Greg Ellis aka Jonathan Rees falsehoods about Plaintiff without any due diligence on their part to verify the information was true. They then regurgitated these falsehoods by reaching out to Plaintiff's business associates, sales agent and distributor harming Plaintiff, ruining her reputation, mental health, creating emotional distress for Plaintiff and her family, with a reckless disregard for Plaintiff. Defendant's used the opportunity to steal Plaintiff's Film Quest For Youth with their conduct so extreme in degree and so outrageous in character that it goes beyond all possible bounds of decency. Plaintiff has learned through direct experience, Defendant's are not professional, are of poor character and lacking in integrity.

33.    Plaintiff has successfully pleaded facts in support of her legal conclusion that Quest for Youth was a "work made for hire" as demonstrated above in Point 6 and Agreement in **Exhibit 7**, and why the Court should deny Defendant's motion to dismiss and allow Plaintiff to continue with her claim against Defendant's to protect her creativity, fixation and originality and hold Defendant's accountable for their tortious interference with contract, tortious inference with business relations, and Copyright Infringement. As stated in the SAC, crew hired to work on productions do not supply their own agreements, the production house and/or their legal team

provide agreements for every role in the production. Plaintiff has supplied some of the production agreements within Quest For Youth, including video releases with Talent, producer Frazer Bailey, and crew, including the work made for hire agreement with Defendant Michael Maloy as the Editor, which is standard protocol, yet Defendant would like the Court to believe he is special and was given permission to create his own agreement to work on Plaintiff's production. Defendant has already shown he is prepared to lie in regards to this production, which he did on his filing to the USCO and to Frazer Bailey deceitfully gaining information from him about Plaintiff's ownership status. Every production house knows the Chain of Title is the bread and butter of the entertainment industry and agreements are required by all involved in the production, however minor their role, prior to Distribution to ensure it is a clean Chain of Title.

34.    The prodigious case law presented by Defendant's Attorney is irrelevant in Plaintiff's lawsuit as action had been taken by the USCO who preceded to investigate her application given there was already a conflicting Copyright registration accepted by the USCO in good faith from Defendant Michael Maloy believing he had provided accurate and truthful statements to the USCO, when he did not. The Fourth Estate rule does not apply to this case and registration was already completed, be it fraudulently, by Defendant Michael Maloy on the 14th January, 2024 one month prior to Plaintiff filing her suit against Defendants.

35.    Plaintiff has stated repeatedly from the outset of this Lawsuit that Defendant Michael Maloy was "a work made for hire" on her film Quest For Youth, supported factually by evidence submitted to this court, and is not speculative, and why Plaintiff is entitled to relief. Plaintiff's statements and evidence is enough to unlock discovery.

36.    Defendant's Michael Maloy and Empirical Media are not the authors of Quest For Youth and the Film was a "work made for hire". Plaintiff created the work, "translating an idea into a fixed tangible expression…"

37.     Plaintiff and Defendant signed a written instrument clearly outlining a "work made for hire" agreement, **Exhibit 7**. Plaintiff does not acknowledge Defendant Michael Maloy as the "party who actually created the work" as he did not, he was an Editor following the direction of the Plaintiff as the Film Director. Plaintiff has met the burden of proving Defendant was a "work made for hire" contractor. Defendant did not bring the "vision" to life, that's not his job as the Editor, but is the job of the Director. Defendant did not translate her idea into a film, Plaintiff did that. Defendant followed her direction as the Director and assembled the footage as per his job as the Editor as standard in the Entertainment Industry.

38.     Plaintiff sought out an Editor with a creative flair in line with the vision she was looking to achieve for her film Quest For Youth, again, very standard in the Entertainment Industry where one finds crew to match the vision the Director is looking to achieve for the Film, not find a Director to fit the style of a crew member or Editor and sometimes conversations can span many months to ensure compatibility and vision is understood.

39.     Defendant Thomas Harrison introduced Plaintiff to Defendant Michael Maloy in January 2023 believing he could be the right Editor to bring Plaintiff's vision and storytelling to life. Plaintiff spent substantial time speaking with Defendant Michael Maloy learning what he knew about stress, emotion, breathing, yoga to ensure he would be a good fit to follow Plaintiff's vision and assemble Plaintiff's footage in line with what Plaintiff wanted to achieve as the Director of Quest For Youth ready to distribute to audiences. Plaintiff believes Defendant did a great job of editing Plaintiff's raw footage and following her direction to First Cut, however, his lack of business acumen, poor character and egocentric personality made for a toxic environment with Plaintiff working on egg shells to ensure Defendant was not offended by changes she wanted to make for the Final Cut and discussed her feelings surrounding this with Defendant Thomas Harrison on a number of occasions. It was clear by Michael Maloy's behavior that Defendant didn't like being told what to do by a female Director and was misogynistic, which

became much worse towards Plaintiff after Greg Ellis aka Jonathan Rees reached out to Defendant with his exclusive websites and falsehoods about Plaintiff, until radio silence by Defendant Michael Maloy, which is extremely unprofessional, followed by him contacting Big Media with falsehoods and registering a fraudulent Copyright for Plaintiff's work.

40.     Director's like Plaintiff don't tend to be happy with their first cuts and will always want to improve on their expression, fixation, creativity, originality to provide audiences with an experience worth the money they have invested to watch the film. It wasn't that Fountain of Youth wasn't a solid cut, it was, however, Plaintiff knew it could be improved further with a likeminded Editor working with Plaintiff who understood what she was looking to achieve for her film, who would follow her direction to fruition providing a top quality experience and on-going learning and knowledge for audiences on a global scale.

41.     Plaintiff has successfully pleaded facts in support of her Copyright ownership as the rightful owner of the Copyright in Quest For Youth, which is automatic protection for US works, demonstrating Defendant Michael Maloy fraudulently applied to the USCO and is not the rightful owner of Plaintiff's work and as stated throughout, he was simply an Editor following Plaintiff's direction and vision as the Director, under a "work made for hire" agreement.

42.     Plaintiff's claim isn't meritless and should survive Defendant's motion to dismiss to continue litigation in the Northern District of New York as Venue in this District is appropriate pursuant to 28 U.S.C. § 1391. The Northern District of New York is also the Judicial District in which a substantial part of the events forming the basis of the Complaint occurred.

43.     In cases based on diversity of citizenship the lawsuit may be filed in the jurisdiction where the Plaintiff or the Defendant resides. 28 U.S.C. § 1332.

44.     Not all Defendants reside in California, with Mark Skipper aka Skip Archimedes residing in Norfolk, United Kingdom. If each Defendant claimed jurisdiction, this case would be impossible to be heard and why Plaintiff's jurisdiction is the appropriate location for this lawsuit.

45.    Given the diversity of Defendants and the Plaintiff domiciled in the Northern District of New York State, this Court and Judicial officers have proper jurisdiction and the right to act over Plaintiff's case against Defendant's.

46.    Defendant Vanguard claim on their website that they have a remote office in New York City and team members based in New York, with Defendant Thomas Harrison owning property with his wife in Long Island, and Defendant's David Guc staying in his New York apartment he's rented for close to 40 years more than fifty percent of his time. Vanguard Management registered a new company with a New York City address and a separate NYC mailing address after they filed for bankruptcy in November 2023. Defendant's Michael Maloy and Empirical Media are managed by Defendant's Vanguard, Thomas Harrison, David Guc and the rest of Vanguard's managers based from their New York remote offices and their physical office in Los Angeles, meeting the requisite minimum contacts for jurisdiction in this District.

47.    Businesses, including Big Media are based in New York State who Defendant Michael Maloy contacted with falsehoods disrupting Plaintiff's film Quest For Youth and her production business based in Upstate New York.

48.    Discovery will show communication and any contracts made between Defendants for Plaintiff's film and/or raw footage, video releases, and how much money Defendant Michael Maloy received or would have received from Mark Skipper aka Skip Archimedes and what footage Defendant Michael Maloy sent him belonging to Plaintiff that Defendant Michael Maloy has still failed to return to Plaintiff.

49.    Defendant signed a work made for hire agreement accepting jurisdiction in New York State for any and all disputes that may arise during the lifetime of the contract.

50.    Workplace gender discrimination has occurred in a workplace. A film production is not set in an office, but in various locations. Plaintiff was targeted by a "work made for hire" Editor due to his misogynistic views towards women and refused to accept Plaintiff as a Female

Director as demonstrated in the events that unfolded outlined in SAC deliberately waiting more than 3 months for Frazer Bailey to sign over his rights as part of the Chain of Title knowing it would be easier to bully Plaintiff as a woman than Frazer as a man.

51.     If Defendant Michael Maloy is claiming he owns substantial rights as noted in **Exhibit 2** and assumed the role of Producer, thereby replacing Plaintiff, then he needs to meet the burden of proof for his role and responsibilities for Quest For Youth, including financial obligations. He will not be able to provide any evidence, because there is none as he hasn't contributed a cent to this production nor does he know any of the Talent Plaintiff and Frazer Bailey shot, and had he simply finished the film edit as per contract and didn't block the film from being distributed with outlandish comments the film would now be showing in more than 20 Countries *"...April Chandler does not hold rights to this film and was not authorized to submit to you…"* If not April Chandler, the Producer of Quest For Youth, who was authorized to submit the film to Big Media? Defendant's Michael Maloy and Empirical Media? These are not unkind emails as suggested by Defendant Michael Maloy on Pg. 3 of his Motion to Dismiss, the emails sent by Defendant's Michael Maloy and Mark Skipper aka Skip Archimedes are Tortious Inference with Contract, Tortious Inference with Prospective Economic Advantage, Intentional Interference with Prospective Business Relations, Harassment, Libel and Slanderous. They were successful at achieving their goal of dismantling the relationship between Big Media and Plaintiff and stopping Plaintiff's film Quest For Youth from being distributed when they made a conscious decision to contact Big Media and other business associates with falsehoods who have since shunned Plaintiff, removed her film from their catalogue, resulting in the Intentional infliction of Emotional Distress on Plaintiff.

52.     Discovery will unlock further information on the Libel and Slanderous causes of action. Evidence currently shows that Defendant's Mark Skipper aka Skip Archimedes, Michael Maloy and Empirical Media were Libel and Slanderous and forwarded websites and screenshots sent to

them from their friend Greg Ellis aka Jonathan Rees to industry people Plaintiff worked with in order to destroy her reputation and make it easier for them to justify stealing Plaintiff's film, including to Big Media, YouTube… with Defendant Michael Maloy directly stating in a letter to Defendant Thomas Harrison and in phone calls to him and others that Plaintiff had committed theft and fraud, **Exhibit 15,** which is not true and therefore is libel and slanderous, along with many other malicious falsehoods within his letter and other communication sent to Plaintiff's business associates. If the Court wishes, Plaintiff can specify Defendants on each of the Libel and Slander causes of action.

53.    On completion of the First Cut of the film Quest For Youth in early October 2023, Defendant Michael Maloy sent a digital copy to Plaintiff to review and provide notes to him with changes in order for him to complete the Final Cut, but then went dark.

54.    Plaintiff has clearly stated in the SAC that a written instrument was signed by Defendant as a work made for hire editor. His job as the editor is specified within the agreement, **Exhibit 7** and he was aware of his role, responsibilities and Plaintiff's expectations.

55.    Defendants registered copyright and uploaded Plaintiff's footage to YouTube and contacted Big Media, and other business associates after she sent a Cease and Desist notice to Defendant Michael Maloy, cc'd to Defendant Thomas Harrison, with Defendant Michael Maloy responding *"see you in Court.",* the first communication to Plaintiff since October 2023.

56.    Plaintiff does suggest that Defendant Michael Maloy contacted business associates, including Big Media who are based in New York State "in connection with the tort[s] in th[is] jurisdiction" and is represented by Vanguard's David Guc based in New York more than fifty percent of the time and Thomas Harrison who spends four months each year at his home in Long Island, New York State. The events did occur in New York State, along with a signed written work made for hire agreement accepting New York State as the jurisdiction in the event of a dispute, **Exhibit 7.**

57.    Plaintiff does allege in the SAC that Defendant infringed her rights in her raw footage and even though she authorized Defendant Michael Maloy to work on the raw footage sent to him in confidence and trust after a signed instrument was in place, expected by a professional working in the Entertainment industry, he was tasked to utilize the raw footage within the parameters of the work made for hire agreement, which he signed agreeing to Plaintiff's terms and conditions. He never received a release from Plaintiff to use her raw footage in another production or in any other capacity. Plaintiff has met the burden of proving that Defendant's Michael Maloy and Empirical Media were a Work Made For Hire contractors as defined, 17 U.S.C. § 101 and is enough to unlock discovery.

58.    Defendant has shown himself to be unethical and a serial liar as documented in his correspondence to producer Frazer Bailey, on his application to the USCO, in emails to Big Media, and to Defendant Thomas Harrison, along with false statements submitted directly to this Court. Defendant stated in his declaration under oath that he can't remember signing an agreement, which is convenient and he further states he looked through his emails over and over to locate the agreement, but couldn't find it. Why would anyone need to spend time looking through their emails for an agreement they are saying is fabricated? Plaintiff would know immediately if she signed an agreement or not and wouldn't have to go through her emails in order to establish the facts. Fortunately, Plaintiff is extremely organized and methodical as a Producer. As mentioned above, documents for the Chain of Title are essential in order for distribution to happen. Every person involved in the production, regardless of how minor their role must have an agreement and is submitted as part of the Chain of Title. It's a non-negotiable point for any Producer as they know, as does the Plaintiff, the film cannot go on any Network or Streaming Platform without a clean Chain of Title. Plaintiff has been forthcoming, open and honest and has not omitted reference to the written instrument as stated in Defendant's Motion to Dismiss, but has in fact stated numerous times within the SAC and from the beginning of her

lawsuit against Defendant's Michael Maloy and Empirical Media that they were a "work made for hire" editor tasked to work on Plaintiff's raw footage in line with her direction and vision for the film.

59.    Plaintiff signed sales agreement with Big Media in December 2023 who had secured distribution in multiple countries for Plaintiff's film Quest For Youth. In January 2024 after Big Media were emailed by Defendant's Michael Maloy and Mark Skipper aka Skip Archimedes in separate emails to them **Exhibit 2** along with phone calls to Big Media and Plaintiff's other business associates, Big Media removed Plaintiff's film Quest For Youth from their website and marketing materials and cut off all communication with Plaintiff, **Exhibit 6.**

60.    In response to Defendants comments on Pg. 20 motion to dismiss, all productions Plaintiff has been involved with spanning 20 + years have legally binding contracts for her to work on the film either as a Director, Producer or Executive Producer, including on her own productions. As stated previously, agreements form part of the Chain of Title and are essential for distribution. Within her role as director it is agreed under the terms that Plaintiff has the right to walk away from the production for any reason, which she did on Mark Skipper's aka Skip Archimedes true story project because he refused to adapt his film after the truth about his story was proven to be fake and he tried to pay Plaintiff a backhand payment of US$100,000 offered to Plaintiff in a recorded video conference by his friend actor Tamer Hussan, also attended by Mark Skipper aka Skip Archimedes and his manager Camilla Storey to turn a blind eye *"so what it's not true, make the film anyway"* which Plaintiff refused to do after it was confirmed by British Gymnastics that he did not win two British gymnastic championships and two gold medals like he regurgitates in books, magazines, news articles, interviews, videos…, nor did he break his back between these two "wins" unable to walk again, healing himself through his mind with no medical intervention, coming back 12 months later to win Gold for the second time, which is what his film was about and why it had to be true. The reason Plaintiff has these terms in her

26

contracts is nothing nefarious, nor is it about ego or her disregard for legally binding contracts as Defendant states, but is simply because she's a mother of three children and cannot be trapped in a contract in the event of a medical emergency requiring Plaintiff to fly home with her children from location —some locations have been in remote parts of Africa, in the jungle in the Philippines et cetera. In one situation, while filming in Turkey, Plaintiff and her children were involved in a bad car accident in November 2017 with her daughter who was 7 years old at the time dislocating her knee. Plaintiff chartered a plane and flew to London for medical treatment after her daughter was stabilized at the local hospital. Production Insurance covered the replacement of Plaintiff as the Director.

61.    No disrespect, but a million dollars may be a lot of money to a Lawyer based in Syracuse, but in the Film industry it's not at all, it's pennies, so no Plaintiff does not dream her movie would make her a millionaire as stated by Defendant on pg. 21 motion to dismiss. ROI is based on Talent involved in the film and subject matter and fortunately in 2024 non-fiction is a popular genre evidenced across networks and streaming platforms asking production houses for more non-fiction documentary and reality tv shows with every film sold listed with a budget and box office earnings, and therefore is not speculation, but based on factual information for films marketed within the same genre bought by Amazon, Netflix, Hulu, Apple… with global distribution. Non-fiction films are certainly cheaper to produce than fiction films, but it's still more money than non-industry people realize, as you will see in Plaintiff's film budget **Exhibit 16.** Plaintiff and Frazer had already agreed to make part two, the practical, "a social experiment" to prove the theory from experts in part one works after part one was distributed. The first thing Plaintiff does as the Producer is invests her own money and pays crew for approximately three months to develop a project by breaking down the film concept, create a solid budget so Plaintiff knows exactly what her financial responsibilities will be for the production from inception to completion, along with pitch deck and marketing materials to explain the film and attract Talent,

including raising finance if required. Once the concept adapts, a new budget is created, which must be adhered to, with the latest budget for Quest For Youth part two attached, **Exhibit 17**, showing a significant increase in budget —platforms pay more for non-fiction in 2024, but the costs to produce a documentary film have also increased substantially over the last few years. After everything Plaintiff has experienced with Defendants, she would be happy at this stage to receive her investment back, no wonder hope to achieve a profit after her film has been directly sabotaged by Defendant Michael Maloy and her reputation savaged. It's Plaintiff's job as the Producer to generate as much revenue as possible and maximize ROI and the audience, although she is not sure this is possible now after bad acts by Defendants.

62.    Crime of Abuse motivated by Gender is not specific to New York City, although Defendant's Vanguard had a physical office in New York City for years until they went bankrupt recently, and now state on their website that all their managers based in New York City work remotely. David Guc has an apartment in NYC for more than 40 years who represents clients from his home, including Defendant Michael Maloy. Defendants have strong ties to New York City with Big Media also having more than one office, including one in New York City. Defendant's actions did have an impact within the city as Plaintiff's film was removed from Big Media's catalogue due to ongoing abuse, discrimination and harassment Plaintiff was subjected to by Defendants. Defendants participated in the creation of the websites with their friend Greg Ellis aka Jonathan Rees and enabled the abuse by sharing these websites to Big Media and others based in NYC, New York State, and beyond.

63.    Plaintiff has in fact experienced extreme and outrageous conduct by Defendants, who intended to cause distress and disregarded the substantial probability of the causing, severe emotional distress with a connection between the conduct and the injury and severe emotional distress. Not only did Defendants enable abuse participating in the content published on the exclusive websites set up to harm Plaintiff, but they shared these websites and screenshots with

Plaintiff's business associates, including Big Media who had already signed an agreement in December 2023 with Plaintiff to market her film Quest For Youth for Global distribution, panicked after receiving emails from Defendants Michael Maloy and Mark Skipper aka Skip Archimedes, afraid that their business and reputation would be harmed by association to Plaintiff and her film project given they were told Plaintiff was an "attempted murderer" and didn't have the authority to sign a deal with them, and why they cut all ties with her and removed Plaintiff's film. Plaintiff has never been convicted of a misdemeanor no wonder a felony. The ramifications of Defendants actions has left Plaintiff mentally, emotionally, physically and financially distressed. A lump in her left breast developed out of nowhere due to stress and weight gain from the emotional distress Defendants have caused. Medical records can be shared under seal at the trial and/or inquest to demonstrate how much harm Defendants have caused Plaintiff, which is substantial and could have been avoided if they had acted professionally and didn't reach out to Plaintiff's business associates, et al with falsehoods, and malicious lies clearly intended to harass Plaintiff, ruin her reputation, and remove Plaintiff from her project in a coup d'état and also use Plaintiff's footage in another production to gain financially from her creativity, fixation and originality. Discovery will unlock Defendant's role in the websites and who Defendants contacted with the intent to harm Plaintiff and destroy her reputation and her production business in a deliberate and malicious campaign of harassment and intimidation, which they never would have done to a man, but believe they can bully Plaintiff because she's a woman. Plaintiff has demonstrated in points above that Defendants conduct was gender-motivated.

64.    Plaintiff has demonstrated to this court that false statements were published to a third party without privilege or authorization, and that those statements caused Plaintiff harm. There is evidence that shows Defendants Michael Maloy and Mark Skipper aka Skip Archimedes were slanderous and libel towards Plaintiff to multiple business associates, in writing, and on the phone including to Defendant Thomas Harrison, Vanguard and Big Media. There's

approximately 20 other people who have contacted Plaintiff after receiving information about Plaintiff from Defendants Mark Skipper aka Skip Archimedes and Michael Maloy who acted as enablers for their friend Greg Ellis aka Jonathan Rees without any thought to the consequences of their actions. She believes discovery will confirm other businesses, associates and crew received slanderous and libel statements who have worked with or known Plaintiff for many years, including her distant family relatives.

65.     Defendant Michael Maloy stating in writing and on the phone to Defendant Thomas Harrison and others that Plaintiff committed theft and fraud on Quest For Youth is a false statement and he has no evidence to the contrary, only what has been regurgitated to him by Greg Ellis aka Jonathan Rees and Mark Skipper aka Skip Archimedes. Trust is central to Plaintiff's role as a Director and Producer. Once feathers come out of a pillow it's almost impossible to get them all back in, which is how Plaintiff feels in regards to the malicious information being circulated about her —it's hard to unsee and not be impacted by such damaging content, putting people on the defensive believing where there's smoke their must be fire, when it's not the case, just a sick game by Defendants to harm Plaintiff beyond repair. Defendant acted in a grossly irresponsible manner, and is harmful to Plaintiff and her business when Defendant Michael Maloy shared these falsehoods with others. Plaintiff has never been arrested, charged or convicted of fraud or theft and therefore it's a false statement. Writing and talking on the phone to Big Media and others that Plaintiff is an "Attempted Murderer" when she has not been arrested or charged with this crime, no wonder convicted, resulting in her film deal with Big Media disappearing in a puff of smoke, and therefore was harmful and intentionally inflicted emotional distress on Plaintiff and is Tortious Inference with Contract/Prospective Economic Advantage and Intentional Interference with Prospective Business Relations, impacting Plaintiff's health, her financial stability and the lives of her children, which never would have happened to a male filmmaker with Plaintiff harassed and discriminated against due to her

Gender. Defendants are cowards and bullies who target women because they will never be able to match physically with a man and why they waited until Frazer Bailey had signed over his rights to Plaintiff for Chain of Title before ramping up their malicious harassment campaign against Plaintiff. Defendant's cannot go around saying and writing whatever they like about Plaintiff without consequences for their bad acts. As an example, it would be inappropriate for Plaintiff to get upset with Defendants attorney for whatever reason and start contacting all his colleagues past, current and prospective associates with falsehoods, along with his wider network and friends from college, his boss, court staff, business partners, his children's friends, his children's teachers…, stating malicious untruths that he committed fraud and theft on a case he was working on and he attempted to murder someone. This and more is what Plaintiff has experienced by Defendants. It is totally unacceptable in a civilized society to behave in such a manner with the ramifications way beyond what money alone can resolve and why Plaintiff is seeking a permanent injunction against Defendants and fighting hard to hold them accountable for their actions in the hope it prevents further harm to Plaintiff, but also protects others in the future with predators maybe thinking twice when they see Plaintiff's abusers found liable for their revolting bad acts.

66.     Plaintiff isn't legally trained or knowledgable of case law sufficient to argue against Defendant's Attorney Benjamin Burdick's mammoth case law supplied in Defendant's motion to dismiss and why Plaintiff is backing up her arguments with factual materials attached as Exhibits to support her claims and demand for relief against Defendant's. Plaintiff filed a timely Copyright application prior to filing this action inhibited by Defendant Michael Maloy's fraudulent Copyright registration, and has pleaded facts in support of her legal conclusion that Defendant was a "work made for hire" Editor. Plaintiff's claim should be resolved in the Northern District of New York where Plaintiff resides. Therefore, Defendant's motion to dismiss should be denied.

67.     If the Court believes Plaintiff has failed to state a claim upon which relief can be granted in a format accepted by the Court or her Copyright was filed prematurely, Plaintiff respectfully requests for leave to refile her action in a format that pleases the Court against Defendants given Plaintiff has more than demonstrated she owns the Copyright and Chain of Title for her work spanning years at significant personal cost to Plaintiff and the other causes of action committed by Defendants against Plaintiff.. If the Court is satisfied that Plaintiff has demonstrated a valid complaint against Defendant's, be it presented to the Court without legal training, Plaintiff respectfully requests the Court denies Defendant's motion to dismiss.

68.   Plaintiff requests permission from the Court to file such additional causes of action Plaintiff deems necessary as a result of further investigation by Plaintiff and the production of Defendant's discovery responses.

Signed: _____

Plaintiff

Date: 09/04/2024

## EXHIBIT 1

## Defendant Michael Maloy's fraudulent Copyright

## Filing for Plaintiff's Film Quest For Youth



### Public Catalog

Copyright Catalog (1978 to present) at DC4
Search Request: Left Anchored Title = Quest For Youth
Search Results: Displaying 2 of 2 entries

[previous] [next]

Labeled View

***Quest For Youth.***

| | |
|---|---|
| **Type of Work:** | Motion Picture |
| **Registration Number / Date:** | PAu004211896 / 2024-01-14 |
| **Application Title:** | Quest For Youth. |
| **Title:** | Quest For Youth. |
| **Description:** | Electronic file (eService) |
| **Copyright Claimant:** | Michael Maloy. Address: 440 N Venice Blvd, Venice, CA, 90291, United States. |
| **Date of Creation:** | 2023 |
| **Authorship on Application:** | Michael Maloy; Domicile: United States; Citizenship: United States. Authorship: entire motion picture. |
| **Rights and Permissions:** | Michael Maloy, Empirical Media, 440 N Venice Blvd, Venice, CA, 90291, United States, (310) 962-3122, maloytv@mac.com |
| **Names:** | Maloy, Michael |

## EXHIBIT 2

**Defendant's Mark Skipper aka Skip Archimedes and Michael Maloy's**

**Emails to Sales Agent Big Media.**

**Name:** Skip Archimedes

**Email:** skipprivate@skiparchimedes.com

**Subject:** Fraud on Quest For Youth

**Message:** Hi there

I actually own all the footage that has been used for the documentary Quest For Youth. April Chandler has committed many legal offences regarding this and I have all contracts that can prove this.

She was hired as an Executive Producer but she ended up trying to black mail all the people that were involved with it

She was paid £60,000 and didn't produce anything and she was meant to raise finance but all she did was cause massive toxicity to the project, which ended up with me firing her.

She owns nothing and I have all legal rights which I'm happy to share with you

I was also working on it myself and this was the trailer that my team had created

https://youtu.be/UE−oxT_AzJg

I have also been in close contact with Michael Maloy who created the edit for Quest For Youth and we believe that we can finish this project at a higher level which will have more impact.

If you would like to discuss things further then please let me know by emailing me back or contacting me direct on +447774667354

If you would like to read more information on April Chandler then please check this website out because she has conned so many people and I wouldn't wish for this to happen with your company.

https://www.aprilchandlerlies.info/

My apologies this isn't a positive message but Michael and myself believe it can end very positively for us all

Many thanks

Skip Archimedes

---------- Forwarded message ---------
From: **Squarespace** <form-submission@squarespace.info>
Date: Wed, Jan 17, 2024 at 1:00PM
Subject: Form Submission - New Form - Quest For Youth
To: <max@bigmedia.tv>

Sent via form submission from *BIG Media*

**Name:** Michael Maloy

**Email:** maloytv@mac.com

**Subject:** Quest For Youth

**Message:** This is in regards to the film 'Quest For Youth' that you are currently marketing for international sales:

https://www.bigmedia.tv/the-quest-for-youth

I am writing to inform you that April Chandler does not hold rights to this film and was not authorized to submit it to you.

I in fact am the author of the film and hold substantial rights. You may contact me for further details.

Regards,


Mike Maloy

Manage Submissions

Does this submission look like spam? Report it here.

**EXHIBIT 3**

**Email with Defendant Thomas Harrison and Vanguard**

**Stating *"I've been trying to resolve this"* Supporting Plaintiff's Claims.**



**Tom Harrison**
Re: Notice                                                      January 17, 2024 at 18:03
To: April Chandler

Siri Found a Phone Number
Thomas Harrison                                               Update     ✕
(323) 655-0400

I'm not a boys club kind of guy. I've been trying to resolve this. I don't disparage you, ever.

Tom Harrison
VP of Talent
**Vanguard Management Group**
**(310)-614-1468** (Cell)
**(323)-655-0400** Office

**From:** April Chandler <april@aprilchandler.com>
**Date:** Wednesday, January 17, 2024 at 2:56 PM
**To:** Thomas Harrison <tom@vanguard-management.com>
**Subject:** Re: Notice

I am not slinging insults at all. I have my business, reputation and livelihood on the line right now and Mike listening to Skip, which got cleared up by Frazer has now become an even bigger monster than Skip with him now trying to steal my project and stating factually incorrect information to the Sales Agent that I'm not the owner of the project, but he is, when you and him both know that is not true, the deal was changed and a dispute over money is nothing to do with chain of title - he would have to sue me, he can't just email people saying it's his project and not mine. How he's acting is totally inappropriate.

I again expressed clearly not to share any information of the agent or distributor to Mike, yet you did and now look what's happened. It impacts you too - I know I don't want to be managed anymore - I just want to move on from everything Greg Ellis, but I did say you'd receive 10% from this film and I stand by that for your contribution.

36

**EXHIBIT 4**

**Select Talent Releases - Redacted To Protect Experts**

**Privacy Interviewed by Producer Frazer Bailey and Plaintiff.**

**Plaintiff Has Strong Ties With Each Expert Spanning Years.**



**PHOTO/VIDEO RELEASE FORM**

I hereby authorise Director & Producer, April Chandler & Mephobia Media Inc. ("Production Company"), and those acting pursuant to its authority a nonexclusive grant to:

(a) Record my likeness and voice on video, audio, photographic, digital, electronic, online format or on any and all other media.

(b) Use my name in connection with these recordings.

(c) Use, reproduce, publish, republish, exhibit, edit, modify, or distribute, in whole or in part, these recordings in all media without compensation for any purpose that the Production Company, and those acting pursuant to its authority, deem appropriate, including promotional or advertising efforts. These recordings may appear in a variety of formats and media now available to the Production Company and may be available in the future (e.g. print publications, video tapes, CD-ROM, Internet, mobile, digital).

d) *My name, image, and likeness as well as recordings shall be used in positive, character neutral or uplifting style and edit. David Wolfe's image and likeness and video material shall not be used in a derogatory manner. DW*

I hereby release the Production Company and those acting pursuant to its authority from liability, claims, and demands for any violation of any personal or proprietary right I may have in connection with such use, including any and all claims for libel, defamation, or invasion of privacy. I understand that all such recordings, in whatever medium, shall remain the property of April Chandler & the Production Company. I have read and fully understand the terms of this release.

Name: *David Wolfe*

Address: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

City: ▓▓▓▓▓▓▓▓▓▓▓▓

State: ▓▓▓▓  Zip Code: ▓▓▓▓▓▓▓▓▓

Phone: ▓▓▓▓▓▓▓  Email: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Signature: *DWolfe*  Date: *October 19, 2023*

Parent/Guardian Signature (if under 18): _____  Date: _____

37



**PHOTO/VIDEO RELEASE FORM**

I hereby authorise Director & Producer, April Chandler & Mephobia Media Inc. ("Production Company"), and those acting pursuant to its authority a nonexclusive grant to:

(a) Record my likeness and voice on video, audio, photographic, digital, electronic, online format or on any and all other media.

(b) Use my name in connection with these recordings.

(c) Use, reproduce, publish, republish, exhibit, edit, modify, or distribute, in whole or in part, these recordings in all media without compensation for any purpose that the Production Company, and those acting pursuant to its authority, deem appropriate, including promotional or advertising efforts. These recordings may appear in a variety of formats and media now available to the Production Company and may be available in the future (e.g. print publications, video tapes, CD-ROM, Internet, mobile, digital).

I hereby release the Production Company and those acting pursuant to its authority from liability, claims, and demands for any violation of any personal or proprietary right I may have in connection with such use, including any and all claims for libel, defamation, or invasion of privacy. I understand that all such recordings, in whatever medium, shall remain the property of April Chandler & the Production Company. I have read and fully understand the terms of this release.



Name: _____ Dain Heer _____

Address: ███████████████ _____

City: ████████████ _____

State: ████████ _____ Zip Code: ███████ _____

Phone ████████████ ____ Email: █████████████████ ____

Signature: _____ Date: 10 / 23 / 2023

Parent/Guardian Signature (if under 18): _____ Date: _____

# Mephobia Media

# *"Fountain of Youth"*

I hereby authorise Director & Producer, April Chandler & Mephobia Media Inc. ("Production Company"), and those acting pursuant to its authority a nonexclusive grant to: (a) Record my likeness and voice on video, audio, photographic, digital, electronic, online format or on any and all other media. (b) Use my name in connection with these recordings. (c) Use, reproduce, publish, republish, exhibit, edit, modify, or distribute, in whole or in part, these recordings in all media without compensation for any purpose that the Production Company, and those acting pursuant to its authority, deem appropriate, including promotional or advertising efforts. These recordings may appear in a variety of formats and media now available to the Production Company and may be available in the future (e.g. print publications, video tapes, CD-ROM, Internet, mobile, digital).

I hereby release the Production Company and those acting pursuant to its authority from liability, claims, and demands for any violation of any personal or proprietary right I may have in connection with such use, including any and all claims for libel, defamation, or invasion of privacy. I understand that all such recordings, in whatever medium, shall remain the property of April Chandler & the Production Company. I have read and fully understand the terms of this release.

Name: Dr John Demartini

Address: ███████████████████████

City: ███████

State: █████

Zip Code: ██████

Phone: ████████████

Email: ██████████████████

Signature: *Dr John Demartini*

Date: 9 /27 /23



**PHOTO/VIDEO RELEASE FORM**

I hereby authorise Director & Producer, April Chandler & Mephobia Media Inc. ("Production Company"), and those acting pursuant to its authority a nonexclusive grant to:

(a) Record my likeness and voice on video, audio, photographic, digital, electronic, online format or on any and all other media.

(b) Use my name in connection with these recordings.

(c) Use, reproduce, publish, republish, exhibit, edit, modify, or distribute, in whole or in part, these recordings in all media without compensation for any purpose that the Production Company, and those acting pursuant to its authority, deem appropriate, including promotional or advertising efforts. These recordings may appear in a variety of formats and media now available to the Production Company and may be available in the future (e.g. print publications, video tapes, CD-ROM, Internet, mobile, digital).

I hereby release the Production Company and those acting pursuant to its authority from liability, claims, and demands for any violation of any personal or proprietary right I may have in connection with such use, including any and all claims for libel, defamation, or invasion of privacy. I understand that all such recordings, in whatever medium, shall remain the property of April Chandler & the Production Company. I have read and fully understand the terms of this release.

Name: ███████  *Business Manager for Mountain of Love Productions, Inc. on behalf of Bruce H. Lipton, Ph.D.*

Address: ████████████

City: ████████████

State: ██████    Zip Code: ███████

Phone: ██████    Email: ████████████████

Signature: _[signature]_    Date: 11/1/2023

Parent/Guardian Signature (if under 18): _____    Date: _____



**PHOTO/VIDEO RELEASE FORM**

I hereby authorise Director & Producer, April Chandler & Mephobia Media Inc. ("Production Company"), and those acting pursuant to its authority a nonexclusive grant to:

(a) Record my likeness and voice on video, audio, photographic, digital, electronic, online format or on any and all other media.

(b) Use my name in connection with these recordings.

(c) Use, reproduce, publish, republish, exhibit, edit, modify, or distribute, in whole or in part, these recordings in all media without compensation for any purpose that the Production Company, and those acting pursuant to its authority, deem appropriate, including promotional or advertising efforts. These recordings may appear in a variety of formats and media now available to the Production Company and may be available in the future (e.g. print publications, video tapes, CD-ROM, Internet, mobile, digital).

I hereby release the Production Company and those acting pursuant to its authority from liability, claims, and demands for any violation of any personal or proprietary right I may have in connection with such use, including any and all claims for libel, defamation, or invasion of privacy. I understand that all such recordings, in whatever medium, shall remain the property of April Chandler & the Production Company. I have read and fully understand the terms of this release.

Name: Bradley Nelson

Address: ████████████

City: ██████████

State: ████    Zip Code: ████████

Phone: ████████████    Email: ████████████████████

Signature: _Bradley Nelson_    Date: Sep 28, 2023

Parent/Guardian Signature (if under 18): _____    Date: _____

**EXHIBIT 6**

**Emails From Big Media Supporting Plaintiff's Claims That Her Film**

**Quest For Youth Was Pulled Due to Correspondence They Received**

**From Defendant's Michael Maloy and Mark Skipper aka Skip Archimedes.**

**Discovery Will Lead to Other Communications Received by Big Media**

 **Max Montoya**                                January 19, 2024 at 13:36

Re: Form Submission – New Form – Quest For Youth

To:  April Chandler

Hi April,

Thanks for the additional information. Could you please provide us with the chain of title like you offered? Generally it's not ideal if there is a dispute over who is the rights holder when it comes to our distribution of the title as there are plenty of other titles in our catalog that don't have this issue. Do you know why Mike Maloy thinks he has the rights he is claiming? And is there any chance of you working this out with him?

Best regards,
--

**Max Montoya**
*Head of Marketing*
BIG Media - New York

  



Check out our **2023 catalogue** [here](here)

**See More** from April Chandler



**Max Montoya**                                              January 25, 2024 at 07:44
Fwd: Form Submission - New Form - Fraud on Quest For Youth
To: April Chandler,  Cc:  Danny Wilk                          *Details*

Hi April,

In light of this and other communications we've received we need to pause any and all distribution and marketing of the program until these issues and claims are resolved and a clear chain of title can be established.

Best regards,
--

**Max Montoya**
*Head of Marketing*

  

**NYC** - Prague - London - Miami - Munich - Delhi - LA



Check out our **2024 catalogue** [here](here)


---------- Forwarded message ---------
From: **Squarespace** <[form-submission@squarespace.info](mailto:form-submission@squarespace.info)>
Date: Thu, Jan 25, 2024 at 4:46AM
Subject: Form Submission - New Form - Fraud on Quest For Youth
To: <[max@bigmedia.tv](mailto:max@bigmedia.tv)>

**EXHIBIT 7**

**A Work Made For Hire Agreement Between Plaintiff**

**and Defendant's Michael Maloy and Empirical Media**



**FOUNTAIN OF YOUTH AGREEMENT**

This work for hire agreement (this "Agreement") is made effective as of January 05,2023, by and between April Chandler, Mephobia Media (the "Recipient"), of 148 Pitkin Hill Road, Johnson City, New York 13790, and Michael Maloy, Empirical Media (the "Contractor"), of 440 N Venice Blvd, Venice, Los Angeles, California 90291. In this Agreement, the party who is contracting to receive the services shall be referred to as "Producer", and the party who will be providing the services shall be referred to as "Editor."

1.    **DESCRIPTION OF SERVICES.** Beginning on January 05, 2023, "Editor" will provide the following services (collectively, the "Services"):

    a) In collaboration with Producer, Editor will create a revised version of the existing documentary film Fountain of Youth.
    b) Editor in collaboration with Director April Chandler and Producer, will manage all aspects of the editing for the documentary, including graphics, music, voice-over mix and color correction.

The Contractor has the right of control over how the Contractor will perform the services. The Recipient does not have this right of control over how the Contractor will perform the services.

The Contractor will also provide any equipment or materials necessary to provide said services and the Recipient is exempt from having to furnish such equipment or materials.

2.    **PAYMENT FOR SERVICES.** Recipient will pay compensation to Contractor for the services, not to exceed $75,000. This compensation shall be payable in installments as the Contractor achieves milestones, as agreed between Producer and Editor, with a final lump sum upon Final Cut and completion of the Services.

No other fees and/or expenses will be paid to Contractor, unless such fees and/or expenses have been approved in advance by Producer in writing. Contractor shall be solely responsible for any and all taxes, Social Security contributions, insurances, and other payroll type taxes applicable to such compensation.

1

44

3.    **TERM/TERMINATION.** This agreement shall terminate automatically on completion of Final Cut signed off by Producer.

Furthermore, the Contractor has the ability to terminate this Agreement "at will" in writing to producer.

4.    **RELATIONSHIP OF PARTIES.** It is understood by the parties that Contractor is not an employee of the Producer. Recipient will not provide fringe benefits, including health insurance benefits, paid vacation, or any other employee benefit, for the benefit of Contractor.

5.    **TITLE AND COPYRIGHT ASSIGNMENT.**
      a) Recipient and the Contractor intend this to be a contract for services and each considers the products and results of the Services to be rendered by Contractor hereunder (the "Work") to be a work made for hire. Contractor acknowledges and agrees that the Work (and all rights therein including, without limitation, copyright) belongs to and shall be the sole and exclusive property of the Recipient.
      b) If for any reason the Work or any part thereof would not be considered a work made for hire under applicable law, Contractor does hereby sell, assign, and transfer to the Recipient, it's successors and assigns, the entire right, title and interest in and to the copyright in the Work and any registrations and copyright applications relating thereto and any renewals and extensions thereof, and in and to all works based upon, derived from, or incorporating the Work, and in and to all income, royalties, damages, claims and payments now or hereafter due or payable with respect thereto, and in and to all clauses of action, either in law or in equity for past, present, or future infringement based on the copyrights, and in and to all rights corresponding to the foregoing throughout the world.
      c) If the Work is one to which the provisions of U.S.C.106A apply, Contractor hereby wavies and appoints the Recipient to assert on Contractor's behalf Contractor's moral rights or any equivalent rights regarding the form or extent or any alteration of the Work (including, without limitation, removal or destruction) or making of any derivative works based on the Work, including, without limitation, photographs, drawings or other visual reproductions of the Work, in any medium, for the Recipient's purposes.
      d) Contractor agrees to execute all papers and to perform such other proper acts as the Recipient may deem necessary to secure for the Recipient or its designee the rights herein assigned.

6.    **OWNERSHIP OF STREAMING PLATFORM AND DISTRIBUTION CONTACTS.** Any streaming platform and distribution contacts that are acquired through Recipient, including, but not limited to email addresses, phone numbers, social media accounts, provided by Recipient to Contractor are the property of the Recipient.

7.    **CONFIDENTIALITY.** Contractor may have access to proprietary, private and/or otherwise confidential information ("Confidential Information") of the Recipient. Confidential Information shall mean all non-public information which constitutes, relates or refers to the operation of the business of the Recipient, including without limitation, all financial, investment, operational, personnel, sales, marketing, managerial and statistical information of the Recipient and Recipient's projects, and any and all trade secrets, customer lists, or pricing information of the Recipient's film. The nature of the information and the manner of disclosure are such that a reasonable person would understand it to be confidential. Contractor will not at any time or in any manner, either directly or indirectly, use for the personal benefit of the Contractor, or divulge, disclose, or communicate in any manner any Confidential Information. Contractor will protect such information and treat the Confidential Information as strictly confidential. This provision shall continue to be effective after the termination of this Agreement. Upon termination of this Agreement, Contractor will return to Recipient all Confidential Information,

2

45

whether physical or electronic, and other items that were used, created, or controlled by the Contractor during the term of this Agreement.

This agreement is in compliance with the Defend Trade Secrets Act and provides civil or criminal immunity to any individual for the disclosure of trade secrets: (i) made in confidence to a federal, state, or local government official, or to an attorney when the disclosure is to report suspected violations of the law; or (ii) in a complaint or other document filed in a lawsuit if made under seal.

8.    **INJURIES.** Contractor acknowledges the Contractor's obligation to obtain appropriate insurance coverage for the benefit of the Contractor (and Contractor's employees, if any). Contractor waives any rights to recovery from the Recipient for any injuries that the Contractor (and/or Contractor's employees) may sustain while performing services under this Agreement and that are a result of the negligence of the Contractor or the Contractor's employees. Contractor will provide the Recipient with a certificate naming the Recipient as an additional insured party.

9.    **INDEMNIFCATION.** Contractor agrees to indemnify and hold harmless Recipient from all claims, losses, expenses, fees including attorney fees, costs, and judgments that may be asserted against the Recipient that result from the acts or omissions of Contractor, the Contractor's employees, if any, and the Contractor's agents.

10.    **NO RIGHT TO ACT AS AGENT.** An "employer-employee" or "principal-agent" relationship is not created merely because (i) the Recipient has or retains the right to supervise or inspect the work as it progresses in order to ensure compliance with the terms of the services and the vision of the Director, or (ii) the Recipient has or retains the right to stop work done improperly. The Contractor has no right to act as an agent for the Recipient and has an obligation to notify any involved parties that it is not an agent of the Recipient.

11.    **ENTIRE AGREEMENT.** This agreement constitutes the entire contract between the parties. All terms and conditions contained in any other writings previously executed by the parties regarding the matters contemplated herein shall be deemed to be merged herein and superseded hereby. No modification of this Agreement shall be deemed effective unless in writing and signed by the parties hereto.

12.    **WAIVER OF BREACH.** The waiver by the Recipient of a breach of any provision of this Agreement by Contractor shall not operate or be construed as a waiver of any subsequent breach by Contractor.

13.    **SEVERABILITY.** If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

14.    **APPLICABLE LAW.** This agreement shall be governed by the Laws of the State of New York.

15.    **SIGNATORIES.** This Agreement shall be signed by April Chandler, Producer and Director on behalf of Mephobia Media and Michael Maloy on behalf of Empirical Media. This Agreement is effective as of the date first above written.

3

RECIPIENT:

By: _____          Date: 01/23/2023

April Chandler
Producer & Director
Mephobia Media

CONTRACTOR:

By: _____          Date: 01/23/2023

Michael Maloy
Editor
Empirical Media

4

**EXHIBIT 8**

**"A Film By April Chandler" Screenshot From First Cut**

**Plaintiff's Film Quest For Youth - Digital Copy Sent to Plaintiff Which She Uploaded to**

**Her Vimeo to Send to Sales Agents For Distribution.**





**EXHIBIT 9**

**Plaintiff Paid Defendant Via Apple Pay**

**as a "Work Made For Hire" Editor**



**EXHIBIT 10**

**Change in Agreement Between Plaintiff and Defendant Michael Maloy**

**and Empirical Media. Budget Not to Exceed $50k from $75k, Which Plaintiff Felt Was**

**Excessive For Editorial Services on a Documentary Film**



**EXHIBIT 11**

**Emails Between Defendant Michael Maloy and Producer Frazer Bailey Supporting**

**Plaintiff's Claims Defendant Registered Copyright After Confirmation**

**Plaintiff Owned Sole Copyright and Chain of Title From Frazer Bailey With Defendant**

**Lying to Him in the Process to Receive Information About the Status of Ownership When**

**the Film Had Already Been Cut 3 Months Prior to Communication and After Distribution**

**Deal Signed in December.**



**Play TV**                                    Inbox...Chandler    Yesterday at 22:37
Fwd: Eternal Youth Project
To: April Chandler

Begin forwarded message:

**From:** Michael Maloy <maloytv@mac.com>
**Subject: Eternal Youth Project**
**Date:** 10 January 2024 at 11:07:40 am AEST
**To:** info@playtv.com.au

Frazier,

I am in independent documentary producer/director who has been approached
to complete the Eternal Youth film.

There seems to be some competing claims of ownership however between
Leonardo Michaels, Skip Archimedes and April Chandler,
so I thought to reach out , since you originated the project and I don't want to
get caught up in any legal issues.

If you are able to reply in confidence, I would be most appreciative. And BTW,
your interviews for the film were outstanding.

Best,

Mike Maloy
Empirical Media
310–962–3122
maloytv@mac.com

 **Play TV**
Fwd: Eternal Youth Project
To: April Chandler

Inbox...Chandler    Yesterday at 22:37

Begin forwarded message:

**From:** Play TV <info@playtv.com.au>
**Subject: Re: Eternal Youth Project**
**Date:** 11 January 2024 at 9:01:13 am AEST
**To:** Michael Maloy <maloytv@mac.com>

Hi Mike,

My understanding is April Chandler owns the film. Definitely not Skip.

Hope this helps.

Cheers

Frazer

On 10 Jan 2024, at 11:07 am, Michael Maloy <maloytv@mac.com> wrote:

Frazier,

I am in independent documentary producer/director who has been approached to complete the Eternal Youth film.

There seems to be some competing claims of ownership however between Leonardo Michaels, Skip Archimedes and April Chandler,
so I thought to reach out , since you originated the project and I don't want to get caught up in any legal issues.

If you are able to reply in confidence, I would be most appreciative. And BTW, your interviews for the film were outstanding.

Best,

**PT**    **Play TV**                     🗀 Inbox...Chandler    Yesterday at 22:38
       Fwd: Eternal Youth Project
       **To:**   April Chandler

---

Begin forwarded message:

**From:** Play TV <info@playtv.com.au>
**Subject: Re: Eternal Youth Project**
**Date:** 11 January 2024 at 10:53:03 am AEST
**To:** Michael Maloy <maloytv@mac.com>

April was on a few of the interview shoots.

I have never met Skip in my life.

Cheers

Frazer

> On 11 Jan 2024, at 9:27 am, Michael Maloy <maloytv@mac.com> wrote:
>
> Thanks Frazer. Was April on the interview shoots with you? I've heard conflicting stories.
>
> Sent from my iPhone
>
>> On Jan 10, 2024, at 3:01PM, Play TV <info@playtv.com.au> wrote:
>>
>> Hi Mike,
>>
>> My understanding is April Chandler owns the film. Definitely not Skip.
>>
>> Hope this helps.
>>
>> Cheers
>>
>> Frazer

53

# EXHIBIT 12

**Screenshots of Elements of Quitclaim Agreement Between Plaintiff and Producer Frazer Bailey to Ensure a Clean Chain of Title for Quest For Youth Film Distribution in Line With Industry Standards Supporting Her Claims Defendant Filed Fraudulent Copyright After Confirmation Frazer Bailey Signed Over Chain of Title to Plaintiff**

**OPERATIVE PROVISIONS**

**1. DEFINITIONS**

1.1 A defined term in this Agreement shall have the following meanings:

**"The Film"** shall mean:

(a) all literary material relating to the Film, including without limitation the screenplay and production entitled "Quest For Youth" written for PTV and all drafts thereof, and any and all synopses, revisions, writings, video releases, websites, interviews, A roll footage, B roll, DVD's and other materials related to the foregoing, and all copyrights in connection therewith and all tangible and intangible properties respecting the foregoing, including the title thereof;

(b) All contracts, agreements, assignments and instruments of every kind and character under which FB and/or PTV may have theretofore acquired any rights in the "The Film".

**"Film"** means the film produced by AC and FB based in whole on the Property, originally entitled "Eternal Youth" now "Quest For Youth";

**"Net Profits of the Film"** shall have the meaning ascribed thereto in the Agreement with the major financier of the Film;

**"Property"** means the "The Film" now entitled "Quest For Youth";

**2. QUITCLAIM**

2.1 FB and PTV further quitclaim and assign to AC, its successors and assigns to AC with full title guarantee all of their right, title and interest in and to "The Film".

2.2 In consideration as aforesaid and upon execution hereof FB and PTV

agrees that neither has any claim over and/or rights in The Film and expressly waives any such claims and/or rights in favor of AC.

**3. REPRESENTATIONS AND WARRANTIES**

The Participants hereby severally represent and warrant that:

3.1.1. the Property or otherwise has not been exercised or dealt in any distribution rights which FB, and PTV has had or might have had in the Property;

3.1.2. there are no contracts or agreements (oral or written) to which any of the Participants is a party relating to the rights in and to the Property which have not been disclosed to AC;

3.1.3. none of the Participants has any claims to or rights or interests in the Property whatsoever;

3.1.4. any interest Participants had in the Property is free from liens, obligations or encumbrances of any kind.

IN WITNESS WHEREOF the parties hereto have entered this Quitclaim Agreement as of the date first above written.

Signed by
for and on behalf of
**Mephobia Media** and **April Chandler**: _____
In the presence of:

Signed by
for and on behalf of
**Play TV** and **Frazer Bailey**: *F Bailey* _____
In the presence of:

**Quitclaim Between Plaintiff and Producer Frazer Bailey Signed By Hand 9th January, 2024, Fully Executed 10th January, 2024 Ready for Quest For Youth Film International Distribution**

IN WITNESS WHEREOF the parties hereto have entered this Quitclaim Agreement as of the date first above written.

Signed by
for and on behalf of
**Mephobia Media** and **April Chandler:** _____
In the presence of:

Signed by
for and on behalf of
**Play TV** and **Frazer Bailey:** _____ 9th January, 2024
In the presence of:

## EXHIBIT 13

## Plaintiff Copyright and Showing Address of Copyright Claimant in NY



Public Catalog

Copyright Catalog (1978 to present) at DC4
Search Request: Left Anchored Title = Quest For Youth
Search Results: Displaying 1 of 2 entries

*Quest For Youth.*

Type of Work: Motion Picture
Registration Number / Date: PAu004219986 / 2024-02-12
Application Title: Quest For Youth.
Title: Quest For Youth.
Description: Electronic file (eService)
Copyright Claimant: April Chandler, 1974- . Address: 200 Washington Avenue, 7181, Endicott NY 13760.
Mephobia Media. Address: 200 Washington Avenue, 7181, Endicott NY 13760.
Date of Creation: 2024
Authorship on Application: April Chandler, 1974- ; Domicile: United States; Citizenship: United Kingdom. Authorship: production, direction.
Mephobia Media, employer for hire. Authorship: entire motion picture.
Pre-existing Material: some preexisting images and footage.
Basis of Claim: all other cinematographic material.
Rights and Permissions: April Chandler, 1601 North Sepulveda Blvd, 533, Manhattan Beach, CA, 90266, United States, (310) 666-7462, april@aprilchandler.com
Copyright Note: C.O. correspondence.
Names: Chandler, April, 1974-

**<u>EXHIBIT 14</u>**

**YouTube Communication to Remove Plaintiff's footage from**

**Defendant Mark Skipper aka Skip Archimedes YouTube Channel**





~ The YouTube Team

Counter Notification as follows:

Videos included in counter notification:

- http://www.youtube.com/watch?v=UE–oxT_AzJg

Display name of uploader: Skip Archimedes

Because I am the legal owner of all the footage within the video taken down. My business partners and myself brought the interview for USD$250,000 in 2015 and I have the legal contract to prove this. We also then went on to film more footage that we added after purchasing the interview footage. Leonardo Michael (Sean Innis real name) was contracted to finish the film and he never did and threatened the people we had hired on set and working on this. We have found out that he is con man and you can check these links out. Leo Michael/Sean Innis Articles https://www.dailymail.co.uk/news/article-10505445/Spiritual-advisor–glamorous-doctor-thought–he.html https://smithjohnson1.weebly.com/blog/leonardo-michael-aka-sean-innis-i-worked-for-sean-innis-as-his-film-editor-for-the-documentary-eternal-youth-he-never-paid-me-stole-my-computer-and-assaulted-me-seminyak-bali-internet I am the rightful owner of all he footage in this video clip. April Chandler ▓▓▓▓▓▓▓▓▓▓ who falsely claims that she has chain of title is known to be a con woman. I hired her as an executive producer and after transferring £60,000 to her, all she did was blackmail and attack the people involved including Tim Qualtrough I fired April but she is trying to steal my footage and my concept for a documentary, we have the evidence to stop her lies. Michael Malloy who wrote and produced Quest For Youth has stopped working with April because since he uncovered her truth Her agent Tom Harrison has also just stopped working with her and she is simply trying to now cause more problems but making a fake claim. I can send you the legal contracts that prove I own this footage and April owns nothing. She hasn't spent any money on this, not been involved with filming, producing, directing, scriptwriting, basically anything. You can see on this website other people who she has conned including myself and she attempted to murder someone as well so she is very dangerous ▓▓▓▓▓▓▓▓▓▓.info

I swear, under penalty of perjury, that I have a good faith belief the material was removed due to a mistake or misidentification of the material to be removed or disabled.

I consent to the jurisdiction of the Federal District Court for the district in which my address is located, or if my address is outside of the United States, the judicial district in which YouTube is located, and will accept service of process from the claimant.

MARK SKIPPER

MARK SKIPPER
47 archdale close
kings Lynn, norfolk
pe330qg
United Kingdom

skipprivate@gmail.com

07774 667354

Help Center • Email Options

You received this email to provide information and updates around your YouTube channel or account.

▶ YouTube

© 2021 Google LLC d /b/a YouTube, 901 Cherry Ave, San Bruno, CA 94066

 **YouTube Copyright**                📁 Inbox – April    January 27, 2024 at 02:01
Re: [SYD2KCBHNO775R3JWBRHQXUJGU] New Copyright Count...            Details

To: April Chandler,

Reply-To: YouTube Copyright



We received a counter notification (below) in response to a copyright removal request that you submitted. A counter notification is a legal request for YouTube to reinstate a video that was removed due to a copyright removal request.

You have **10 US business days** to reply to this counter notification. Your response **must include evidence that you've taken legal action against the uploader** to keep the content from being reinstated to YouTube. Usually, evidence would include a lawsuit against the uploader, which names the YouTube URL(s) at issue and seeks a court order to restrain the alleged infringement.

**Evidence should be submitted by replying directly to this email**. Do not send your reply to copyright@youtube.com.

After 10 US business days, if we don't get a response from you, the content at issue may be reinstated to YouTube. You can find more information about the legal action you must take and what evidence is acceptable in our Help Center.

– The YouTube Team

Counter Notification as follows:

Videos included in counter notification:

- http://www.youtube.com/watch?v=UE–oxT_AzJg

Display name of uploader: Skip Archimedes

60

## EXHIBIT 15

## Email from Defendant Michael Maloy to

## Thomas Harrison forwarded to Plaintiff with Falsehoods,

## Zero Evidence or Factual Information to Back up Defendant's Claims.

To: Tom Harrison
From: Michael Maloy
Re: Quest For Youth Documentary
Date: 12/15/2023

Tom,

I seek to sever all ties with April Chandler and the documentary project currently titled 'Quest For Youth'. Furthermore I request that my name be removed from all promotional materials for the film including the current sales deck.

The reasons are as follows:

<u>Breach of Contract/Theft of Services & Intellectual Property</u>

- April Chandler has breached the material terms of the contract (attached as separate document) which stipulate payment terms and milestones, none of which have been met. This makes her liable for theft of Maloy's services and use of his intellectual property without consent.

<u>Fraudulent Representations</u>

- The contract itself was entered into by April Chandler with fraudulent representations of her ownership and participation which induced Maloy to underbid his services and implicate him in creating a false narrative.

- The fraudulent representations are as follows:

- That she was involved and present for the film's primary shoots in 2011 and 2015. It has been verified that she was not. (see attached screen shots of law suit)

- That the idea and the concept of the film was hers which has been proven to be false.

- That she invested $600,000 of her own money in the project which she has not.

- That Mark Skipper was a hired 'b-roll' actor when he was in fact a featured player and intended as host/narrator of the film.

I contend that as a result of the above, I am the legal author and creator of the current version of the film, having conceived of the narrative, written the narration, curated and licensed stock footage and music. I therefore seek as remedy $75,000 for which I will waive all rights and provide April Chandler with her original drives, plus the Avid drive which contains all the files necessary for the completion of the film.

**EXHIBIT 16**

**Fountain of Youth (FOY) Part I (now Quest For Youth) Budget**



FOY (1) US $ TOPSHEET.pdf
1 page

"FOUNTAIN OF YOUTH PART 1" - THE THEORY - DOCUMENTARY

EXEC PROD. APRIL CHANDLER.

PHYSICAL BUDGET. JULY 2018
US $ TOPSHEET

| Acct# | Category Description | Page | Total |
|---|---|---|---|
| 1100 | STORY, RIGHTS, CONTINUITY | 1 | $10,526 |
| 1200 | PRODUCERS UNIT | 1 | $147,368 |
| 1300 | DIRECTOR | 1 | $52,632 |
| 1400 | CAST | 1 | $36,842 |
| | **Total Above-The-Line** | | **$247,368** |
| 2000 | PRODUCTION STAFF | 1 | $61,842 |
| 2500 | SET OPERATIONS | 2 | $3,947 |
| 3100 | MAKE-UP & HAIRDRESSING | 2 | $1,579 |
| 3200 | LIGHTING | 2 | $1,316 |
| 3300 | CAMERA | 2 | $37,106 |
| 3400 | PRODUCTION SOUND | 2 | $3,947 |
| 3500 | TRANSPORTATION | 3 | $47,764 |
| 3600 | LOCATION | 3 | $46,250 |
| 3700 | STORAGE | 3 | $1,053 |
| | **Total Below-The-Line Production** | | **$204,804** |
| 4500 | EDITING | 3 | $26,316 |
| 4600 | MUSIC | 4 | $9,868 |
| 4700 | POST PRODUCTION SOUND | 4 | $12,500 |
| | **Total Below-The-Line Post** | | **$48,684** |
| 6500 | PUBLICITY | 4 | $6,579 |
| 6700 | INSURANCE | 4 | $1,974 |
| 6800 | GENERAL EXPENSE | 4 | $15,789 |
| 7400 | FINANCING | 4 | $15,756 |
| | **Total Below-The-Line Other** | | **$40,098** |
| | **Total Above-The-Line** | | **$247,368** |
| | **Total Below-The-Line** | | **$293,586** |
| | **Total Above and Below-The-Line** | | **$540,954** |
| | **Total Fringes** | | **$0** |
| | **Grand Total** | | **$540,954** |

**EXHIBIT 17**

**Fountain of Youth (FOY) Part II**

**(now Quest For Youth "A Social Experiment") Budget**



FOY Part 2 OCT 18.pdf
Page 1 of 10

| Acct# | Category Description | Page | Total |
|---|---|---|---|
| 1100 | STORY, RIGHTS, CONTINUITY | 1 | $90,350 |
| 1200 | PRODUCERS UNIT | 1 | $1,235,975 |
| 1300 | DIRECTOR | 2 | $361,000 |
| 1400 | CAST | 2 | $299,100 |
| | **Total Above-The-Line** | | **$1,986,425** |
| 2000 | PRODUCTION STAFF | 3 | $357,900 |
| 2100 | EXTRA TALENT | 3 | $3,200 |
| 2200 | SET DESIGN | 4 | $25,000 |
| 2300 | SET CONSTRUCTION | 4 | $16,200 |
| 2400 | SET STRIKING | 4 | $10,200 |
| 2500 | SET OPERATIONS | 4 | $18,850 |
| 2600 | TECHNICAL ADVISORS | 4 | $51,800 |
| 2700 | SET DRESSING | 5 | $15,000 |
| 2800 | PROPERTY | 5 | $1,560 |
| 2900 | WARDROBE | 5 | $3,250 |
| 3100 | MAKE-UP & HAIRDRESSING | 5 | $53,950 |
| 3200 | LIGHTING | 5 | $61,950 |
| 3300 | CAMERA | 6 | $214,500 |
| 3400 | PRODUCTION SOUND | 6 | $35,250 |
| 3500 | TRANSPORTATION | 6 | $36,750 |
| 3600 | LOCATION | 7 | $176,780 |
| 3800 | VIDEO TAPE: PRODUCTION | 7 | $13,500 |
| | **Total Below-The-Line Production** | | **$1,095,640** |
| 4500 | EDITING | 7 | $210,000 |
| 4600 | MUSIC | 7 | $100,000 |
| 4700 | POST PRODUCTION SOUND | 8 | $155,000 |
| 4800 | POST PROD FILM & LAB | 8 | $220,000 |
| 4900 | MAIN & END TITLES | 8 | $33,000 |
| | **Total Below-The-Line Post** | | **$718,000** |
| 6500 | PUBLICITY | 8 | $20,000 |
| 6700 | INSURANCE | 8 | $52,396 |
| 6800 | GENERAL EXPENSE | 8 | $247,500 |
| | **Total Below-The-Line Other** | | **$319,896** |
| | CONTINGENCY : 5.0% | | $212,378 |
| | COMPLETIION GUARANTEE : 2.5% | | $106,189 |
| | **Total Above-The-Line** | | **$1,986,425** |
| | **Total Below-The-Line** | | **$2,133,536** |
| | **Total Above and Below-The-Line** | | **$4,119,961** |
| | **Total Fringes** | | **$127,596** |
| | **Grand Total** | | **$4,566,124** |